# MATHEWS *v.* UNITED STATES

No. 86–6109.   Argued December 2, 1987—Decided February 24, 1988

REHNQUIST, C. J., delivered the opinion of the Court, in which BREN-NAN, MARSHALL, STEVENS, and O'CONNOR, JJ., joined. BRENNAN, J., filed a concurring opinion, *post*, p. 66. SCALIA, J., filed an opinion concurring in the judgment, *post*, p. 67. WHITE, J., filed a dissenting opinion, in which BLACKMUN, J., joined, *post*, p. 68. KENNEDY, J., took no part in the consideration or decision of the case.

*Franklyn M. Gimbel*, by appointment of the Court, 481 U. S. 1046, argued the cause for petitioner. With him on the briefs were *Jeffrey A. Kaufman* and *Marna M. Tess-Mattner*.

*Charles A. Rothfeld* argued the cause for the United States. With him on the brief were *Solicitor General Fried, Assistant Attorney General Weld*, and *Deputy Solicitor General Bryson*.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

This case requires the Court to decide whether a defendant in a federal criminal prosecution who denies commission of the crime may nonetheless have the jury instructed, where the evidence warrants, on the affirmative defense of entrapment. The United States Court of Appeals for the Seventh Circuit upheld the ruling of the District Court, which had refused to instruct the jury as to entrapment because petitioner would not admit committing all of the elements of the crime of accepting a bribe. 803 F. 2d 325 (1986). This holding conflicts with decisions of other Courts of Appeals, which have taken a variety of approaches to the question.[1] We

---

[1] Two other Circuits have adopted the approach taken by the Seventh Circuit. See *United States* v. *Hill*, 655 F. 2d 512, 514 (CA3 1981); *United States* v. *Whitley*, 734 F. 2d 1129, 1139 (CA6 1984). Four Circuits have ruled that a defendant may not affirmatively deny committing the elements of the crime if he desires an entrapment instruction. *United States*

granted certiorari to resolve this conflict, and we now reverse.

Petitioner was employed by the Small Business Administration (SBA) in Milwaukee, Wisconsin, and was responsible for the SBA's "8A Program," which provided aid to certain small businesses. Under the program, the SBA obtained Government contracts and subcontracted them to program participants. The SBA would then assist the participants in performing the contracts. Midwest Knitting Mills, whose president was James DeShazer, was one of the participants in the 8A Program. DeShazer's principal contact at the SBA was petitioner.

In October 1984, DeShazer complained to a Government customer that petitioner had repeatedly asked for loans. DeShazer believed that petitioner was not providing Midwest with certain 8A Program benefits because DeShazer had not made the requested loans. In early 1985, the Federal Bureau of Investigation (FBI) arranged for DeShazer to assist in the investigation resulting from his complaint. Under FBI surveillance, DeShazer offered petitioner a loan that, according to DeShazer, petitioner had previously requested.

---

v. *Annese,* 631 F. 2d 1041, 1046–1047 (CA1 1980); *United States* v. *Mayo,* 705 F. 2d 62, 72–73 (CA2 1983); *United States* v. *Dorta,* 783 F. 2d 1179, 1181 (CA4), cert. denied, 477 U. S. 905 (1986); *United States* v. *Mora,* 768 F. 2d 1197, 1198–1199 (CA10 1985), cert. denied, 474 U. S. 1083 (1986). One Circuit has declared that a defendant denying the elements of the crime may rely on entrapment if the issue is raised by the Government's evidence. *United States* v. *Smith,* 757 F. 2d 1161, 1169 (CA11 1985). Another Circuit has developed a hybrid rule allowing a testifying defendant to contest the intent element of the offense charged, but not the acts, while arguing entrapment. *United States* v. *Henry,* 749 F. 2d 203 (CA5 1984) (en banc); two Circuits have ruled that a defendant is entitled to an entrapment instruction even if he testifies and denies all elements of the offense. *United States* v. *Demma,* 523 F. 2d 981 (CA9 1975) (en banc); *Hansford* v. *United States,* 112 U. S. App. D. C. 359, 303 F. 2d 219 (1962). We note also that even within the Circuits, the decisions have been contradictory and inconsistent.

Petitioner agreed to accept the loan, and two months later, DeShazer met petitioner at a restaurant and gave him the money. Petitioner was immediately arrested and charged with accepting a gratuity in exchange for an official act. 18 U. S. C. § 201(g).

Before trial petitioner filed a motion *in limine* seeking to raise an entrapment defense. The District Court denied the motion, ruling that entrapment was not available to petitioner because he would not admit all of the elements (including the requisite mental state) of the offense charged. The District Court did, however, allow petitioner to argue as his first line of defense that his acts "were procurred *[sic]* by the overt acts of the principle *[sic]* witness of the Government, Mr. DeShazer."[2] App. 131.

At trial, the Government argued that petitioner had accepted the loan in return for cooperation in SBA matters. The Government called DeShazer, who testified both that petitioner had repeatedly asked for loans and that he and petitioner had agreed that the loan at issue would result in SBA-provided benefits for Midwest. The Government also played tape recordings of conversations between DeShazer and petitioner in which they discussed the loan. Petitioner testified in his own defense that although he had accepted the loan, he believed it was a personal loan unrelated to his duties at the SBA. Petitioner stated that he and DeShazer were friends and that he had accepted a personal loan from DeShazer previously. According to petitioner, he was in dire financial straits when DeShazer broached the possibility of providing a loan. Petitioner also testified that DeShazer had stated that he needed quickly to get rid of the money that he was offering to petitioner because he had been hiding the money from his wife and was concerned that she would be upset if she discovered this secret; DeShazer had also stated

---

[2] In pursuing this line of defense, petitioner apparently introduced the same evidence that he planned to adduce in support of his entrapment claim.

at one point that if petitioner did not take the money soon, DeShazer would be tempted to spend it.

At the close of the trial, petitioner moved for a "mistrial" because of the District Court's refusal to instruct the jury as to entrapment. The District Court noted that the evidence of entrapment was "shaky at best," *ibid.*, but rather than premise its denial of petitioner's motion on that ground, the court reaffirmed its earlier ruling that, as a matter of law, petitioner was not entitled to an entrapment instruction because he would not admit committing all elements of the crime charged. The jury subsequently found petitioner guilty.

The United States Court of Appeals for the Seventh Circuit affirmed the District Court's refusal to allow petitioner to argue entrapment:

> "When a defendant pleads entrapment, he is asserting that, although he had criminal intent, it was 'the Government's deception [that implanted] the criminal design in the mind of the defendant.' *United States* v. *Russell*, 411 U. S. 423, 436 . . . (1973); *United States* v. *Rodgers*, 755 F. 2d 533, 550 (7th Cir. 1985). We find this to be inconsistent *per se* with the defense that the defendant never had the requisite criminal intent. We see no reason to allow [petitioner] or any other defendant to plead these defenses simultaneously." 803 F. 2d, at 327.

We granted certiorari, 480 U. S. 945 (1987), to consider under what circumstances a defendant is entitled to an entrapment instruction. We hold that even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment.

Because the parties agree as to the basics of the affirmative defense of entrapment as developed by this Court, there is little reason to chronicle its history in detail. Suffice it to say that the Court has consistently adhered to the view, first enunciated in *Sorrells* v. *United States*, 287 U. S. 435 (1932),

that a valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct. See *Sherman* v. *United States*, 356 U. S. 369, 376–378 (1958); *United States* v. *Russell*, 411 U. S. 423, 435–436 (1973); *Hampton* v. *United States*, 425 U. S. 484, 489 (1976). Predisposition, "the principal element in the defense of entrapment," *Russell, supra*, at 433, focuses upon whether the defendant was an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself of the opportunity to perpetrate the crime. *Sherman, supra*, at 372; *Russell, supra*, at 436. The question of entrapment is generally one for the jury, rather than for the court. *Sherman, supra*, at 377.

The Government insists that a defendant should not be allowed both to deny the offense and to rely on the affirmative defense of entrapment. Because entrapment presupposes the commission of a crime, *Russell, supra*, at 435, a jury could not logically conclude that the defendant had both failed to commit the elements of the offense *and* been entrapped. According to the Government, petitioner is asking to "clai[m] the right to swear that he had no criminal intent and in the same breath to argue that he had one that did not originate with him." *United States* v. *Henry*, 749 F. 2d 203, 214 (CA5 1984) (en banc) (Gee, J., dissenting).

As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor. *Stevenson* v. *United States*, 162 U. S. 313 (1896); 4 C. Torcia, Wharton's Criminal Procedure § 538, p. 11 (12th ed. 1976) (hereinafter Wharton). A parallel rule has been applied in the context of a lesser included offense instruction, see Fed. Rule Crim. Proc. 31(c); *Keeble* v. *United States*, 412 U. S. 205, 208 (1973); *Sansone* v. *United States*, 380 U. S. 343, 349 (1965). In *Stevenson*, this Court reversed a murder conviction arising out of a gunfight in the Indian Territory. The

principal holding of the Court was that the evidence was sufficient to entitle the defendant to a manslaughter instruction, but the Court also decided that the defendant was entitled as well to have the jury instructed on self-defense.  The affirmative defense of self-defense is, of course, inconsistent with the claim that the defendant killed in the heat of passion.

Federal appellate cases also permit the raising of inconsistent defenses.  See *Johnson* v. *United States*, 138 U. S. App. D. C. 174, 179, 426 F. 2d 651, 656 (1970) (the defense in a rape case was permitted to argue that the act did not take place and that the victim consented), cert. dism'd, 401 U. S. 846 (1971); see also *Womack* v. *United States*, 119 U. S. App. D. C. 40, 336 F. 2d 959 (1964).  And state cases support the proposition that a homicide defendant may be entitled to an instruction on both accident and self-defense, two inconsistent affirmative defenses.  4 Wharton § 545, p. 32.

The Government points out that inconsistent pleading is specifically authorized under the Federal Rules of Civil Procedure, but that there is no parallel authorization under the Federal Rules of Criminal Procedure.  Rule 8(e)(2) of the Federal Rules of Civil Procedure provides in relevant part:

> "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. . . . *A party may also state as many separate claims or defenses as he has regardless of consistency* and whether based on legal, equitable or maritime grounds.  All statements shall be made subject to the obligations set forth in Rule 11."  (Emphasis added.)

The absence of a cognate provision affecting criminal trials, we think, is not because the Rules intended to more severely restrict criminal defendants than civil parties, but because of the much less elaborate system of pleadings — particularly with respect to the defendant — in a criminal case.  The issues of fact in a criminal trial are usually developed by the evidence adduced and the court's instructions to the jury.  A

simple plea of not guilty, Fed. Rule Crim. Proc. 11, puts the prosecution to its proof as to all elements of the crime charged, and raises the defense of entrapment. *Sorrells,* 287 U. S., at 452. The only matters required to be specially pleaded by a defendant are notice of alibi, Fed. Rule Crim. Proc. 12.1, or of intent to rely on insanity as a defense, Fed. Rule Crim. Proc. 12.2.

The Government argues that allowing a defendant to rely on inconsistent defenses will encourage perjury, lead to jury confusion, and subvert the truth-finding function of the trial. These same concerns are, however, present in the civil context, yet inconsistency is expressly allowed under the Federal Rules of Civil Procedure. We do not think that allowing inconsistency necessarily sanctions perjury. Here petitioner wished to testify that he had no intent to commit the crime, and have his attorney argue to the jury that if it concluded otherwise, then it should consider whether that intent was the result of Government inducement. The jury would have considered inconsistent defenses, but petitioner would not have necessarily testified untruthfully.

We would not go so far as to say that charges on inconsistent defenses may not on occasion increase the risk of perjury, but particularly in the case of entrapment we think the practical consequences will be less burdensome than the Government fears. The Court of Appeals in *United States* v. *Demma,* 523 F. 2d 981, 985 (CA9 1975) (en banc), observed:

"Of course, it is very unlikely that the defendant will be able to prove entrapment without testifying and, in the course of testifying, without admitting that he did the acts charged. . . . When he takes the stand, the defendant forfeits his right to remain silent, subjects himself to all the rigors of cross-examination, including impeachment, and exposes himself to prosecution for perjury. Inconsistent testimony by the defendant seriously impairs and potentially destroys his credibility. While we hold that a defendant may both deny the acts

and other elements necessary to constitute the crime charged and at the same time claim entrapment, the high risks to him make it unlikely as a strategic matter that he will choose to do so."

The Government finally contends that since the entrapment defense is not of "constitutional dimension," *Russell,* 411 U. S., at 433, and that since it is "relatively limited," *id.,* at 435, Congress would be free to make the entrapment defense available on whatever conditions and to whatever category of defendants it believed appropriate. Congress, of course, has never spoken on the subject, and so the decision is left to the courts. We are simply not persuaded by the Government's arguments that we should make the availability of an instruction on entrapment where the evidence justifies it subject to a requirement of consistency to which no other such defense is subject.

The Government contends as an alternative basis for affirming the judgment below that the evidence at trial was insufficient to support an instruction on the defense of entrapment. Of course evidence that Government agents merely afforded an opportunity or facilities for the commission of the crime would be insufficient to warrant such an instruction. But this question was pretermitted by the Court of Appeals, and it will be open for consideration by that court on remand.

*Reversed and remanded.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE BRENNAN, concurring.

I join the Court's opinion. I write separately only because I have previously joined or written four opinions dissenting from this Court's holdings that the defendant's predisposition is relevant to the entrapment defense. *Hampton* v. *United States,* 425 U. S. 484, 495 (1976) (BRENNAN, J., dissenting);

*United States* v. *Russell*, 411 U. S. 423, 436 (1973) (Douglas, J., dissenting); *id.*, at 439 (Stewart, J., dissenting); *Sherman* v. *United States*, 356 U. S. 369, 378 (1958) (Frankfurter, J., concurring in judgment). See also *Sorrells* v. *United States*, 287 U. S. 435, 453 (1932) (Roberts, J., concurring in judgment). Although some governmental misconduct might be sufficiently egregious to violate due process, *Russell, supra,* at 431–432, my differences with the Court have been based on statutory interpretation and federal common law, not on the Constitution. Were I judging on a clean slate, I would still be inclined to adopt the view that the entrapment defense should focus exclusively on the Government's conduct. But I am not writing on a clean slate; the Court has spoken definitively on this point. Therefore I bow to *stare decisis*, and today join the judgment and reasoning of the Court.

JUSTICE SCALIA, concurring in the judgment.

I concur in the judgment of the Court because in my view the defense of entrapment will rarely be genuinely inconsistent with the defense on the merits, and when genuine inconsistency exists its effect in destroying the defendant's credibility will suffice to protect the interests of justice.

The typical case presenting the issue before us here is one in which the defendant introduces evidence to the effect that he did not commit the unlawful acts, or did not commit them with the requisite unlawful intent, and also introduces evidence to show his lack of predisposition and inordinate government inducement. There is nothing inconsistent in these showings. The inconsistency alleged by the government is a purely formal one, which arises only if entrapment is defined to require not only (1) inordinate government inducement to commit a crime, (2) directed at a person not predisposed to commit the crime, but also (3) causing that person to commit the crime. If the third element is added to the definition, counsel's argument to the jury cannot claim entrapment without admitting the crime. But I see no reason why the third

element is essential, unless it is for the very purpose of rendering the defense unavailable without admission of the crime. Surely it does not add anything of substance to the findings the jury must make, since findings of (1) inordinate inducement plus (2) lack of predisposition will almost inevitably produce a conclusion of (3) causality. To be sure, entrapment cannot be available as a defense unless a crime by the object of the entrapment is established, since if there is no crime there is nothing to defend against; but in that sense all affirmative defenses assume commission of the crime.

My point is not that entrapment must be defined to exclude element (3). Whether it is or not, since that element seems to me unnecessary to achieve the social policy fostered by the defense I am not willing to declare the defense unavailable when it produces the formal inconsistency of the defendant's simultaneously denying the crime and asserting entrapment which assumes commission of the crime. I would not necessarily accept such formal inconsistency for other defenses, where the element contradicted is a functionally essential element of the defense.

Of course in the entrapment context, as elsewhere, the defendant's case may involve genuine, *non*formal inconsistency. The defendant might testify, for example, that he was not in the motel room where the illegal drugs changed hands, and that the drugs were pressed upon him in the motel room by agents of the government. But that kind of genuine inconsistency here, as elsewhere, is self-penalizing. There is nothing distinctive about entrapment that justifies a special prophylactic rule.

JUSTICE WHITE, with whom JUSTICE BLACKMUN joins, dissenting.

At his criminal trial, petitioner took the stand and flatly denied accepting a loan "for or because of any official act." App. 128–130; 18 U. S. C. §201(g). Petitioner later moved for a mistrial because the District Court would not permit

him to rely on that testimony while he simultaneously argued that, in fact, he *had* accepted a loan for an official act, but only at the Government's instigation. Today, the Court holds that this rather sensible ruling on the part of the District Court constitutes reversible error. The reasons the Court offers for reaching this conclusion are not at all persuasive, and I respectfully dissent.

## I

The Court properly recognizes that its result is not compelled by the Constitution. As the Court acknowledges, petitioner has no Fifth or Sixth Amendment right to conduct the inconsistent entrapment defense that he wished to mount at trial. *Ante,* at 66. And yet, if the Constitution does not compel reversal of the decision below, then what does?

Certainly not any Act of Congress, or the Federal Rules of Criminal Procedure. As the majority candidly admits, "Congress . . . has never spoken on the subject [at issue here], and so the decision is left to the courts." *Ibid.* Moreover, the Court also frankly notes that while the Federal Rules of Civil Procedure contain a provision expressly authorizing inconsistent defenses, Fed. Rule Civ. Proc. 8(e)(2), the Federal Criminal Rules are without any such authorization. *Ante,* at 64. Indeed, the rather scant authority the majority cites in support of its view that inconsistent defenses are generally permitted in criminal trials, *ibid.,* is strongly suggestive of just how extraordinary such pleadings are in the criminal context.[1]

---

[1] While some cases have explicitly permitted inconsistent criminal defenses outside of the entrapment area, *e. g., Whittaker* v. *United States,* 108 U. S. App. D. C. 268, 269, 281 F. 2d 631, 632 (1960), others have been less receptive to this defense strategy, see, *e. g., United States* v. *Ervin,* 436 F. 2d 1331, 1334 (CA5 1971); *Blunt* v. *United States,* 131 U. S. App. D. C. 306, 312, n. 12, 404 F. 2d 1283, 1289, n. 12 (1968). Given the rarity of reported federal cases on this question, drawing any conclusion about the prevailing practice in the federal courts is difficult. See Note, Entrap-

Nor is the result the Court reaches urged by a predominance of authority in the lower courts. As the Court recognizes, only two Circuits have held, as the Court does today, that a criminal defendant may deny committing the elements of a crime, and then contend that the Government entrapped him into the offense. The remaining Circuits are far more restrained in their allowance of such inconsistent defenses, divided along the lines the majority discusses in its opinion. *Ante*, at 59–60, n. 1.

Thus, neither the Constitution, nor a statute, nor the Criminal Rules, nor the bulk of authority compels us to reverse petitioner's conviction. Nor does the Court claim support from any of these sources for its decision. Instead, the majority rests almost exclusively on an application of the "general proposition [that] a defendant is entitled to an instruction as to any legally sufficient defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Ante*, at 63. There are several reasons, however, why this "general proposition" is inapposite here.

## II

First, there is the unique nature of the entrapment defense. There is a valuable purpose served by having civil litigants plead alternative defenses which may be legally inconsistent. Allowing a tort defendant to claim both that he owed no duty of care to the plaintiff, but that if he did, he met that duty, preserves possible alternative defenses under which the defendant is entitled to relief. It prevents formalities of pleadings, or rigid application of legal doctrines, from standing in the way of the equitable resolution of a civil dispute. See generally 2A J. Moore, J. Lucas, & G. Grotheer, Moore's Federal Practice ¶ 8.32, pp. 8–224—8–229 (2d ed. 1987). The same may be true for *some* criminal defenses

---

ment and Denial of the Crime: A Defense of the Inconsistency Rule, 1986 Duke L. J. 866, 878–879, and n. 127.

(such as "self-defense" or "provocation") where a defendant may truthfully testify as to the facts of the crime, leaving it to his counsel to argue that these facts make out, as a matter of law, several possible defenses.

But the entrapment defense, by contrast, "is a relatively limited defense"; it is only available to "a defendant who has committed all the elements of a proscribed offense." *United States* v. *Russell*, 411 U. S. 423, 435 (1973). Thus, when a defendant (as petitioner did here) testifies that he did not commit the elements of the offense he is charged with, the defense of entrapment is *not* a plausible alternative legal theory of the case; rather, it is a proper defense *only* if the accused is lying. We have rejected before the notion that a defendant has a right to lie at trial, or a right to solicit his attorney's aid in executing such a defense strategy. See *Nix* v. *Whiteside*, 475 U. S. 157, 173 (1986). And there is respectable authority for concluding that no legitimate end of the criminal justice system is served by requiring a trial court to entertain such tactics, in the form of an entrapment defense which is at odds with the defendant's own testimony.[2]

Allowing such inconsistency in defense tactics invites the scourge of an effective criminal justice system: perjury. In the past, we have taken extraordinary steps to combat perjury in criminal trials; these steps have even included permitting the admission of otherwise inadmissible evidence to prevent a defendant from procuring an acquittal via false testimony. See, *e. g.*, *Oregon* v. *Hass*, 420 U. S. 714, 720–723 (1975); *Harris* v. *New York*, 401 U. S. 222, 225–226 (1971). Yet today, the Court reaches a result which it concedes "may . . . on occasion" increase the risk of perjury. *Ante*, at 65. This is reason enough to reject the Court's result. Worse still, the majority's prognostication may well

---

[2] See, *e. g.*, *United States* v. *Dorta*, 783 F. 2d 1179, 1181–1182 (CA4 1986); *United States* v. *Smith*, 757 F. 2d 1161, 1167–1168 (CA11 1985); *United States* v. *Henry*, 749 F. 2d 203, 214–216 (CA5 1984) (en banc) (Gee, J., dissenting).

be an understatement. Even if—as the Court suggests, *ibid.*—inconsistent defenses do not measurably increase the frequency of perjury in civil trials, the risk of perjury in a criminal trial is always greater than in a civil setting because the stakes are so much higher. See *Britt* v. *North Carolina*, 404 U. S. 226, 238 (1971) (Douglas, J., dissenting). Absent some constitutional or statutory mandate to conduct criminal trials in a particular way, we should be taking steps to minimize, not increase, the danger of perjured testimony.

After all, a criminal trial is not a game or a sport. "[T]he very nature of a trial [i]s a search for truth." *Nix* v. *Whiteside, supra,* at 166. This observation is particularly applicable to criminal trials, which are the means by which we affix our most serious judgments of individual guilt or innocence. It is fundamentally inconsistent with this understanding of criminal justice to permit a defendant to win acquittal on a rationale which he states, under oath, to be false. "Permitting a defendant to argue two defenses that cannot both be true is equivalent to sanctioning perjury by the defendant." See Note, Entrapment and Denial of the Crime: A Defense of the Inconsistency Rule, 1986 Duke L. J. 866, 883–884.

Finally, even if the Court's decision does not result in increased perjury at criminal trials, it will—at the very least—result in increased confusion among criminal juries.[3] The lower courts have rightly warned that jury confusion is likely to result from allowing a defendant to say "I did not do it"

---

[3] Again, the fact that the system endures the jury confusion caused by inconsistent civil defenses is no support for the Court's conclusion here. For one thing, reliability is obviously a more important concern in criminal cases than in civil.

Moreover, in civil cases, the trial court has the option of ordering the jury to complete a special verdict form, thus minimizing any errors in judgment which may result from inconsistent defenses. See Fed. Rule Civ. Proc. 49(a). The Criminal Rules contain no similar provision, cf. Fed. Rule Crim. Proc. 31, and "as a general rule special verdicts are disfavored in criminal cases," see *United States* v. *Buishas,* 791 F. 2d 1310, 1317 (CA7 1986).

while his lawyer argues "he did it, but the government tricked him into it." See, *e. g., United States* v. *Dorta*, 783 F. 2d 1179, 1182 (CA4 1986). Creating such confusion may enable some defendants to win acquittal on the entrapment defense, but only under the peculiar circumstances where a jury rejects the defendant's own stated view of the facts. We have not previously endorsed defense efforts to prevail at trial by playing such "shell games" with the jury; rather, we have written that "[a] defendant has no entitlement to the luck of a lawless decisionmaker." *Strickland* v. *Washington*, 466 U. S. 668, 695 (1984). Nor, it should be added, is there any entitlement to a baffled decisionmaker.

## III

Ultimately, only petitioner knows whether he accepted a loan in exchange for an official act, or whether he obtained it as a personal favor. Today, the Court holds that petitioner has a right to take the stand and claim the latter, while having his attorney argue that he was entrapped into doing the former. Nothing counsels such a result—let alone compels it. Hence this dissent.