944 F.2d 903
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Asmat SEKANDARY, Defendant-Appellant.
 No. 90-5510.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1991.
Decided Sept. 25, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CR-89-336-JFM)
 Argued Beth Mina Farber, Assistant Federal Defender, Baltimore, Md., for appellant; Robert Eugene Sims, Assistant United States Attorney, Baltimore, Md., for appellee.
 On Brief: Fred Warren Bennett, Federal Public Defender, Baltimore, Md., for appellant; Breckinridge L. Willcox, United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and CLAUDE M. HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant Asmat Sekandary appeals his bribery conviction based on two issues: first, whether the trial court erred by reviewing in camera and ex parte certain records submitted by the government to determine whether they were discoverable pursuant to Brady v. Maryland, 373 U.S. 83 (1963); and second, whether the district court erred in not giving the jury an instruction on entrapment. Holding that the court did not err in either regard, we affirm.
 
 I.
 A.
 
 2
 On August 29, 1989, the grand jury for the District of Maryland returned a one count indictment charging the defendant Asmat Sekandary with offering and giving a $2,000 bribe to U.S. Customs Inspector George Holley, a public official, in violation of 18 U.S.C. §§ 201(a) and 201(b)(1)(c). After counsel for the defendant entered his appearance, the United States, on October 30, 1989, filed a Notice of Filing and Motion for an in camera inspection. The government submitted certain documents under Brady v. Maryland, 373 U.S. 83 (1963). A copy of the notice and motion was served on defense counsel. After the parties conferred with the trial court, they each briefed the issue of whether an in camera ex parte review was appropriate in this case.
 
 
 3
 Judge Walter E. Black, Jr., to whom the case was originally assigned, issued a written opinion granting the government's motion and ruling that the tendered materials were not discoverable under Brady. New counsel entered an appearance for the defendant, and thereafter moved for reconsideration of the court's earlier ruling. By then the case had been reassigned to Judge J. Frederick Motz who refused to reconsider the question.
 
 
 4
 The case was tried before Judge Motz on April 16-17, 1990. Before the case was submitted to the jury, the judge ruled that the defendant was not entitled to an entrapment instruction.
 
 
 5
 The jury returned a guilty verdict on April 19, 1990. On July 9, 1990, Sekandary was sentenced to a five-month term of imprisonment and two years of supervised release to include a five-month period of home arrest. On July 17, 1990, the defendant filed a notice of appeal, and the court ordered the defendant released on bond pending appeal on September 10, 1990.
 
 B.
 
 6
 The U.S. Customs Service is responsible for ensuring that automobiles imported into the United States meet safety and emission standards. Cars are processed through the Privately Owned Vehicle office ("POV") at the Dundalk Marine Terminal. Customs Inspector George Holley, recently assigned at the POV, met Asmat Sekandary on August 16, 1989. Sekandary came to the POV seeking to import a 1982 Mercedes-Benz.
 
 
 7
 There are two ways for an individual to import a car into the United States. Under informal entry, the car must be built to U.S. specifications. Accordingly, the customer need only pay the applicable duty at the pier.
 
 
 8
 Cars, however, that are not manufactured to U.S. specifications must be imported under formal entry. This requires the posting of a bond for three times the value of the car. Moreover, an Independent Commercial Importer ("ICI") must then pick up the vehicle to do any necessary conversion work and certify that it does conform to U.S. standards. The importer, in this case Sekandary, is responsible for paying the costs of converting the automobile to the relevant standards.
 
 
 9
 After Holley examined the paperwork given to him by Sekandary, he determined that the Mercedes did not conform to the standards.
 
 
 10
 Because Holley was new to the job, he told Sekandary that he would have to obtain a bond to get the automobile released. Sekandary left the POV office, but returned later, complaining that it would cost from $5,000 to $7,000 to have the automobile imported. Later Holley examined the car, his first time performing such an inspection, and told Sekandary that the car was up to par. Furthermore, he told Sekandary that he was prepared to do the paperwork necessary for informal importation. Sekandary then wrote a check for the applicable duty of $300.
 
 
 11
 Holley, however, suspected that the car contained drugs.[1] He, therefore, consulted his supervisor Adrian Allen. Allen delayed the inspection and had the automobile searched. While no contraband was found, it was determined that the car did not, in fact, conform to the standards. Allen told Sekandary that Holley had made a mistake and that the formal process was the only means of importing the car.
 
 
 12
 On the following day, August 17, 1989, Alice Bock, the office manager of J.K. Motors, an approved ICI, received a telephone call from someone identifying himself as Sekandary. The caller told Bock that he would pay J.K. Motors $1,000 to inspect the car and prepare the required conversion report, since he said that the necessary conversion work had already been done.
 
 
 13
 On the same day Inspector Dorothy Heater received two phone calls from a person identifying himself as Sam Sekandary. The caller asked to speak with Holley. Heater offered to help, but the caller said that only Holley could help. When supervisor Allen learned of these calls, he had Holley contact Internal Affairs before making any return calls to Sekandary.
 
 
 14
 Subsequent to the arrival of two Internal Affairs agents, Inspector Holley made two consensually monitored telephone calls to Sekandary. During the first conversation, Sekandary asked Holley what he should do. Moreover, he requested Holley's home phone number so presumably they could talk without the risk of being overheard. Holley told Sekandary to call from a pay phone in ten minutes. During the second conversation, Sekandary suggested that he had $2,000 to give to Holley to secure importation. Finally, they agreed to meet in a nearby restaurant for Holley to be paid. When the two arrived at the restaurant, Sekandary was arrested.
 
 II.
 A.
 
 15
 The general standard for the resolution of the Brady issue was articulated in Pennsylvania v. Ritchie, 480 U.S. 39 (1987). In Ritchie the Court ruled that the defendant's fair trial interest in a child abuse case and the state's interest in maintaining the confidentiality of its child abuse files were both protected by in camera ex parte review of potential Brady material. Id. at 61.
 
 
 16
 Both Ritchie and a case in this circuit cited in the district court opinion, United States v. Brown, 479 F.Supp. 1247 (D.Md.1979), reveal that there "is a need to balance, on the one hand, [the defendant's] interest in receiving a fair trial--including the opportunity to conduct a full cross-examination and to impeach [the witness]--and, on the other hand, the need to spare [the witness] any unnecessary invasion of privacy." Brown, at 1253-1254, citing, United States v. Jackson, 576 F.2d 46, 49 (5th Cir.1978). Ritchie and Brown reveal that both governmental and privacy interests may serve as proper justifications for ex parte in camera determinations of Brady material. Having carefully examined all of the contested material, we believe that such interests were served. Accordingly, we affirm the district court's ex parte in camera review.
 
 B.
 
 17
 There are two elements of an entrapment defense: government inducement of the crime, and the absence of a predisposition on the part of the defendant to engage in illicit activity. Mathews. v. United States, 485 U.S. 58, 63 (1988). A defendant is entitled to an instruction on entrapment if the evidence provides a sufficient basis for a reasonable jury to find in his favor. Id.
 
 
 18
 Quite simply, there is no such basis for an entrapment defense in this case. The phone calls by "Sam Sekandary" asking to speak to Customs Inspector George Holley, the request by Asmat Sekandary to talk to Holley on the inspector's home phone, and Sekandary's suggestion of the bribe sua sponte reveal criminal predisposition. The obvious presence of such predisposition eliminates any factual basis for an entrapment defense and any attendant justification for a jury instruction on entrapment.
 
 III.
 
 19
 Based upon the preceding discussion, we affirm the district court's ex parte in camera review and denial of the entrapment instruction.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The record is silent as to the basis for Holley's suspicion