968 F.2d 1212
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Theodore M. HURWITZ, Defendant-Appellant.
 No. 91-5504.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 28, 1991
Decided: July 16, 1992
As Amended Aug. 12, 1992.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CR-90-241)
 ARGUED: Beth Mina Farber, Assistant Federal Defender, Baltimore, Maryland, for Appellant.
 Jan Paul Miller, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 ON BRIEF: Fred Warren Bennett, Federal Public Defender, Baltimore, Maryland, for Appellant.
 Richard D. Bennett, United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before RUSSELL and WILKINS, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Theodore M. Hurwitz appeals his conviction of conspiracy to possess cocaine with the intent to distribute and possession of cocaine with the intent to distribute. 21 U.S.C.A. # 8E8E # 841(a)(1), 846 (West 1981 & Supp. 1992). He argues that the district court erred in refusing to instruct the jury on the defense of entrapment. Because we conclude that the evidence was insufficient to support an entrapment instruction, we affirm.
 
 I.
 
 2
 In March 1990 Hurwitz began serving a 90-day term of imprisonment at the Baltimore County Detention Center (BCDC) for a charitable solicitation violation. Hurwitz was experiencing serious financial difficulties and had been forced to return his automobile to a finance company. Because Hurwitz required an automobile to continue his employment following his release from BCDC, Hurwitz approached a fellow inmate, Cyril R. Benson, for advice concerning how to retrieve his automobile.
 
 
 3
 In May 1990 Benson contacted a Drug Enforcement Administration (DEA) agent and told him that he had information concerning drug traffickers. In exchange for the information and Benson's further cooperation, the agent agreed to assist Benson in obtaining work release. Approximately one week before Hurwitz's release, Benson suggested to Hurwitz that he "could come out extremely well" selling drugs.[1] Benson told Hurwitz that he had 50 kilograms of stolen cocaine that Hurwitz could assist in selling. Benson, who was aware of Hurwitz's financial condition, presented the opportunity to sell the drugs as a panacea for Hurwitz's problems. Hurwitz advised Benson that he would have to think about it, but ultimately agreed to participate in the drug transaction.
 
 
 4
 Upon his release from BCDC, Hurwitz began to vigorously pursue the transaction. He contacted a friend, Carroll Wilkinson, whom Hurwitz believed might be a prospective buyer. Additionally, Hurwitz discussed the drug transaction by telephone with Benson, who was still incarcerated at BCDC, and wrote to Benson referencing the arrangement.
 
 
 5
 Several weeks later, Benson telephoned Hurwitz from BCDC in the presence of the DEA agent, who recorded the conversation. Benson told Hurwitz that thereafter Hurwitz was to deal with his associate, "Charlie," the DEA agent. Soon after this conversation, Hurwitz contacted Charlie in order to discuss the deal. In another recorded telephone conversation initiated by Hurwitz, Charlie and Hurwitz agreed to meet the following day to arrange the transaction.
 
 
 6
 During this meeting Hurwitz asked Charlie if he had any cocaine available for sale. The agent informed Hurwitz that cocaine was available and that he would sell it for $20,000 per kilogram. Hurwitz then confirmed that Wilkinson would purchase cocaine on these terms and agreed with Charlie on the details of the transaction. The following day the agent, Hurwitz, and Wilkinson met as agreed. After the purchase price and cocaine were exchanged, the agents arrested Hurwitz and Wilkinson.
 
 
 7
 Hurwitz was indicted and proceeded to trial on charges of conspiring to possess cocaine with the intent to distribute and possessing cocaine with the intent to distribute. Hurwitz admitted in his trial testimony to his involvement in the transaction but claimed that he was entrapped. During the charge conference, Hurwitz requested that the district court instruct the jury on the defense of entrapment. The Government opposed the proposed charge on the basis that the evidence did not support the instruction. The district court agreed with the Government and refused to give the requested entrapment charge. The jury convicted Hurwitz of both counts.
 
 II.
 
 8
 A defendant "is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." Mathews v. United States, 485 U.S. 58, 62 (1988). "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Id. at 63. While the question of whether a defendant has been entrapped is generally one for the jury, id., when government agents merely offer an opportunity to commit the crime and the defendant promptly avails himself of that opportunity, an entrapment instruction is not warranted, see Jacobson v. United States, 112 S. Ct. 1535, 1541 (1992).
 
 
 9
 Hurwitz contends that Benson's persistence in discussing the drug transaction and its potential for monetary gain crossed the line from solicitation to inducement.[2] We disagree. Inducement occurs when the behavior of the government is "so inducive to a reasonably firm person as likely to displace mens rea." United States v. DeVore, 423 F.2d 1069, 1072 (4th Cir. 1970), cert. denied, 402 U.S. 950 (1971). Evidence that government agents provided only the opportunity to commit the offense is not sufficient to demonstrate inducement. See Mathews, 485 U.S. at 66. Mere solicitation by the government, as occurred here, is also insufficient "since solicitation by itself is not the kind of conduct that would persuade an otherwise innocent person to commit a crime." DeVore, 423 F.2d at 1071; United States v. Velasquez, 802 F.2d 104, 106 (4th Cir. 1986).
 
 
 10
 "Predisposition is defined as a defendant's state of mind and inclinations before his initial exposure to government agents." United States v. Marren, 890 F.2d 924, 930 (7th Cir. 1989); see also Jacobson, 112 S. Ct. at 1540-41. In order to show predispositionSU11a finding of specific prior contemplation of criminal conduct is not required.... [T]he fact that a defendant has not previously committed any related crime is not proof of lack of predisposition.... It is sufficient if the defendant is of a frame of mind such that, once his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own preference and not the product of government persuasion.
 
 
 11
 United States v. Osborne, 935 F.2d 32, 37-38 (4th Cir. 1991) (citations omitted). When, as here, a "defendant is simply provided with the opportunity to commit a crime, ... the ready commission of the criminal act amply demonstrates the defendant's predisposition." Jacobson, 112 S. Ct. at 1541.
 
 
 12
 Hurwitz was approached only several times over the course of a week with the suggestion that distribution of illegal drugs could prove economically advantageous to him. Although he initially showed some hesitancy in engaging in the sale, his readiness to engage in the illegal activity and the vigor with which he thereafter pursued it belies his claim that he was entrapped. We agree with the district court that the evidence failed to support a jury instruction on the defense of entrapment.
 
 AFFIRMED
 
 
 [1]
 Benson did not testify at trial, so Hurwitz's account of the nature and extent of Benson's contacts was unrebutted
 
 
 [2]
 The Government concedes that Benson was acting on its behalf and that his actions must be attributed to it