**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-4488**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

REGINALD PARKER,

                                        Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, Chief District Judge.  (CR-04-275)

---

Submitted:  January 3, 2007          Decided:  January 19, 2007

---

Before WILKINS, Chief Judge, and GREGORY and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Rudolph A. Ashton, III, MCCOTTER, ASHTON & SMITH, P.A., New Bern, North Carolina, for Appellant.  George E. B. Holding, Acting United States Attorney, Anne M. Hayes, Barbara D. Kocher, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Reginald Parker appeals his conviction and sentence for conspiring to make false statements in connection with the sale and acquisition of firearms. See 18 U.S.C.A. §§ 371, 922(a)(6) (West 2000). We affirm.

I.

On December 21, 2002, Parker was a felon, having been convicted of armed robbery in 1992. Nevertheless, that day he acquired a rifle at a pawn shop in Goldsboro, North Carolina, by having another man, Travis James, purchase the weapon for him and represent in the necessary paperwork that James was the actual buyer of the weapon. Later, in February 2003, Parker and James made a similar purchase of a 12-gauge shotgun at a Goldsboro pawn shop, with James again representing in the required paperwork that he was buying the weapon for himself.

Parker was subsequently charged in a three-count indictment with one count of conspiracy to make false statements in connection with the acquisition of a firearm and two counts of possessing a firearm after being convicted of a felony, see 18 U.S.C.A. § 922(g)(1) (West 2000). The indictment alleged that Parker conspired with a man named Roderick R. Warren and with "others both known and unknown to the grand jury." J.A. 12. Following a jury trial, Parker was found guilty of the conspiracy charge but not guilty of the two remaining counts. The district

2

court imposed a sentence of 60 months imprisonment, the statutory maximum punishment for his offense.

## II.

Parker first maintains that the district court erred in denying his motion to suppress the SKS firearm, or alternatively, to prevent the Government from referring to the fact that the weapon was recovered in Philadelphia, Pennsylvania, at a prior residence of Parker's. Parker contends that suppression was required because he was not timely notified that the Government had obtained the firearm, see Fed. R. Crim. P. 16, and because its probative value was substantially outweighed by the danger that it would cause him unfair prejudice, see Fed. R. Evid. 403. We disagree.

The Government explained to the district court that it had maintained an open-file policy, that it intended to offer Parker the opportunity to inspect the weapon, and that it had notified Parker immediately upon acquiring the weapon. Nevertheless, the district court informed Parker that it would accommodate a request to reschedule Parker's trial date so that he could conduct additional investigation concerning the firearm.[1] This handling of Parker's motion was well within the discretion of the district court.

---

[1] Parker did not request a continuance.

The ruling of the district court that the evidence was not excludable under Rule 403 was also well supported. The testimony that a weapon purchased for Parker was recovered from a city where Parker had resided previously tended to prove that he possessed the weapon and then disposed of it. To the extent that admission of the evidence damaged Parker's case, it was due only to its legitimate probative value, not to any unfairness.

## III.

Parker also argues that the district court erred in denying his motion for acquittal on the conspiracy charge because the indictment alleged a conspiracy between Warren, Parker, and other unindicted coconspirators, but the evidence established that Warren was not part of any conspiracy. We disagree.

Parker concedes that the Government was not required to show that each of the people named in the indictment as members of the conspiracy was actually a member of the conspiracy in order to prove that a conspiracy existed. And, Parker does not contend that the evidence was insufficient to prove such a conspiracy. He nevertheless maintains that the absence of proof that all of the people named in the indictment were members of the conspiracy was insufficient "to support the indictment as charged." Reply Br. of Appellant Reginald Parker at 5. Although he does not describe it as such, it appears that Parker's claim is that there was an unconstitutional variance from his indictment.

4

A "variance" occurs when the evidence presented at trial differs materially from the facts alleged in the indictment. See United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). However, a variance is not grounds for reversal "unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." See United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999).

Here, even assuming arguendo that a variance occurred, it certainly was not grounds for reversal. The specificity with which the indictment described the alleged conspiracy was easily sufficient to put Parker on notice of the conspiracy sought to be charged and to protect him from possibly being prosecuted a second time for the same offense.

IV.

Parker next contends that the district court erred in allowing the Government to cross-examine him regarding the large number of firearms he had been involved with storing at his uncle's house in relation to the armed robbery that served as his predicate felony conviction for the felon-in-possession charges. We disagree.

Parker and the Government stipulated to the existence and nature of the prior felony conviction for Parker's § 922(g) charges, and they now agree that, in light of the stipulation, further evidence regarding the conviction would not have been

admissible to prove the prior-conviction element of that offense. The Government nevertheless asserts that Parker's trial testimony made the Government's questioning relevant.

The Government's position stems from Parker's testimony on cross-examination contradicting the testimony of at least one Government witness that Parker had asked for a 30-round clip to go with the firearm purchased on December 21, 2002. After denying that he had asked for the clip, Parker added, "I don't know where that came from, because I don't know anything about a clip. I wouldn't even know how it goes into that gun that's sitting on that floor. If you gave it, I wouldn't know how it fit in there." J.A. 376. Parker denied ever "handling a big weapon like that." Id. He then testified that he had handled "[m]aybe two" firearms in his life. Id.

In light of this testimony, the Government sought to question Parker regarding his handling of more than 70 firearms he had helped steal during the armed robbery that was the predicate felony for his § 922(g) charges. Over Parker's objection, the district court ruled that "the government may question the defendant about whether or not he handled guns with regard to his prior conviction," and specified that "this line of inquiry may make reference to a particular number of guns." Id. at 491. The Government subsequently asked Parker whether it was true "that at one time [he had been] involved with ... taking to and storing at

6

[his] uncle's house 69 handguns, three rifles and two shotguns." Id. at 497. Parker admitted that he had, then he added that "[t]hat was the charge that I admitted to with the armed robbery." Id.

The district court was within its discretion in allowing the questioning. Once Parker testified that he had handled only two firearms in his life, had never handled a large firearm, and thus would not know anything about the clip that at least one government witness claimed that Parker asked for, the testimony about Parker's involvement with the tens of firearms became relevant "to contradict [the] specific statements" that Parker had made and therefore prevent Parker from undermining the credibility of the government witnesses who testified that Parker asked for the clip. See United States v. Leavis, 853 F.2d 215, 220 (4th Cir. 1988). The Government was therefore "entitled ... to rebut the false impression [Parker] was creating by his testimony." Id.

Parker also argues that the probative value of the testimony was substantially outweighed by its potential to cause him unfair prejudice. See Fed. R. Evid. 403. That was not the case, however. We have already explained the probative value of the evidence. While it did have the potential to damage Parker's case, there was nothing unfair about this potential prejudice.

V.

Parker next argues that the district court erred in refusing to instruct the jury regarding entrapment. He maintains that evidence presented to the jury tended to show that he involved himself with the charged conspiracy and firearm transactions in an attempt to implicate those individuals with whom he dealt and thereby obtain leniency for his friend--and now wife--Christina Ellis, who was facing criminal charges of her own. We disagree.

A defendant "is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." Mathews v. United States, 485 U.S. 58, 62 (1988). "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Id. at 63. "'Inducement' ... involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993).

Here, Parker failed to present evidence that government agents induced him to engage in the charged conspiracy. The district court thus correctly refused to instruct the jury regarding entrapment.

## VI.

Parker finally contends that the district court erred in counting a 1988 aggravated assault conviction as three criminal history points in calculating his advisory guideline range, thereby placing him in Criminal History Category IV rather than III. Even assuming that the district court erred, however, the error was harmless because the change from Category IV to III would not have reduced Parker's guideline range; either way it would have been 60 months, the statutory maximum for the offense of conviction.[2] See 18 U.S.C.A. § 371; United States Sentencing Guidelines Manual § 5G1.1(a) (2004) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

## VII.

In sum, for the foregoing reasons, Parker's conviction and sentence are affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the

---

[2]But for the existence of the statutory maximum, the guideline range calculated as Parker suggests would have been 63-78 months as opposed to 77-96 months if the aggravated assault conviction counted for three points.

materials before the court and argument would not aid the decisional process.

AFFIRMED