UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose L. ORTIZ, Edwin Torres, Ivan J. Correa, Luis A. Oquendo, also known as Luis Rodriguez, and Carlos A. Diaz, Defendants–Appellants.

Nos. 92–1070, 92–1161, 92–1162, 92–1174, and 92–1374.

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1993.

Decided Sept. 23, 1993.

Bennett E. Kaplan (argued), Office of the U.S. Atty., Crim.Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S. in Nos. 92–1070, 92–1161 and 92–1374.

Rocco J. DeGrasse, Asst. U.S. Atty., Bennett E. Kaplan (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S. in Nos. 92–1162 and 92–1174.

Carl P. Clavelli, Chicago, IL, for Jose L. Ortiz.

Sheldon Nagelberg (argued), Chicago, IL, for Edwin Torres.

Stanley L. Hill, Vickie Voukidis Blum (argued), Christopher W. Graul, Hill & Associates, Chicago, IL, for Ivan J. Correa.

John M. Cutrone (argued), Chicago, IL, for Luis A. Oquendo.

Thomas A. Durkin, Durkin, Morgan, Roberts, Barnett & Bley, Daniel S. Alexander (argued), Chicago, IL, for Carlos A. Diaz.

Before COFFEY and RIPPLE, Circuit Judges, and RONEY, Senior Circuit Judge.*

RONEY, Senior Circuit Judge.

Defendants Ivan Correa, Carlos Diaz, Martin Feliciano, Luis Oquendo, Jose Ortiz, and Edwin Torres were charged in a two-

* Hon. Paul H. Roney of the United States Court of Appeals for the Eleventh Circuit, sitting by desig-

nation.

count indictment with conspiracy to distribute and possession with intent to distribute approximately seven kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Feliciano pleaded guilty, Ortiz pleaded guilty to the conspiracy count, and the other four went to trial and were convicted of both counts of the indictments. Torres, Diaz, and Oquendo appeal their convictions, and Ortiz and Correa appeal their sentences. Feliciano does not appeal. All five appellants claim that the district court erred in excluding information about a witness. In addition, Torres claims that he should have received an entrapment instruction; Diaz claims insufficiency of the evidence and improper admission of co-conspirator statements; and Ortiz and Correa claim they should not have received increases in their offense levels for being managers or supervisors. Finding no error, we affirm.

## Facts

The drug transaction at issue in this case occurred on January 3, 1991. Prior to that date, in early December 1990, government informant Enrique Salamanca had been picked up by defendant Edwin Torres, a cab driver, to go to a motel on the north side of Chicago. Salamanca was a DEA informant who had decided to take an extra day or two while in Chicago to "make some cases." The conversation in the 20 to 25 minute cab ride was equivocal, but Salamanca made it known to Torres that he was looking for some kilos of cocaine. Ultimately, after a series of telephone conversations between the two, Salamanca offered Torres $2,000 per kilogram to locate seven kilos of cocaine for him. Torres asked some people, including his nephew defendant Luis Oquendo, but was unable to locate a source. There was testimony, contradicted by Salamanca, that the price was raised to $3000 per kilogram, after which Torres again called Oquendo, reaching him at the home of his friend, defendant Jose Ortiz. Oquendo told Torres that he was still unable to locate a source, but Ortiz, who had been listening, said that he might be able to find one. Ortiz located a source, and on January 3, Torres, Oquendo and Ortiz met a government informant, Sergio Garcia, who by then had replaced Salamanca in the transaction, in a restaurant parking lot. There they met the "buyer," Agent Rafael Tovar. Ortiz made a telephone call to a person later identified as defendant Ivan Correa, and he then instructed the group that they would drive to the place where the sale would occur. Ortiz drove in the lead car, and he directed Oquendo to ride with Agent Tovar. Torres rode with Garcia. En route, Ortiz noticed a car following them, so he pulled over and the others parked behind him for a brief time.

The transaction took place at an apartment leased in Correa's name, in which defendant Carlos Diaz also lived. Torres and Oquendo remained outside to conduct countersurveillance. Ortiz spoke to Agent Tovar about whether Tovar would be searched, and defendant Martin Feliciano let them into the apartment. Once inside, Ortiz told Correa that Agent Tovar wanted to see the cocaine, and Correa responded that he wanted to see Tovar's money first. Correa said that the cocaine was not in the apartment. Tovar said that he was leaving the apartment until the defendants had some cocaine to show him. He went outside, remaining there until Ortiz came to him and said they had cocaine, and then returned with Ortiz to the apartment. At Feliciano's suggestion, Correa went into the bedroom and got a one-kilogram package of cocaine. With defendants Ortiz, Feliciano, Diaz, and Correa present, and Oquendo and Torres outside keeping watch, Agent Tovar inspected the package and determined that it contained cocaine. He asked to see the rest of the cocaine. Feliciano told Diaz to put the one-kilogram sample back where it came from. Diaz did so and remained in the apartment with Agent Tovar. Correa, Feliciano, and Ortiz went to get the remainder of the cocaine. After they returned with the drugs and prepared to make the transaction, the defendants were arrested.

## I. Evidentiary Ruling

Defendants claim that the district court improperly refused to admit the personnel file of Agent Tovar, a key witness in this case, for purposes of allowing defendants to cross-examine the agent about prior instances of untruthfulness. Although specific

instances of the conduct of a witness, other than conviction of a crime, may not be proved by extrinsic evidence for the purpose of attacking credibility, in the discretion of the court they may be inquired into on cross-examination. F.R.E. 608(b). In addition to the specific provision in the rule that this evidence is only admissible in the discretion of the court, a district court has broad discretion in assessing the admissibility of any evidence. *United States v. Abayomi*, 820 F.2d 902, 908 (7th Cir.), *cert. denied*, 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). The court in this case did not abuse its discretion in ruling that the information in the file was not sufficiently relevant to warrant its admission. Much of the file contains commendations. The only item arguably serving defendants' purposes is a letter indicating that Tovar erroneously reported the hours of his court attendance. The district court was well within its discretion in deeming the letter irrelevant.

## II. Entrapment Instruction

▮ Defendant Edwin Torres claims that the district court erred in refusing his request to give an entrapment instruction to the jury. To entitle a defendant to an entrapment instruction, a defendant must, of course, show the defense is supported by the evidence. There are two elements of an entrapment defense: (1) government inducement of the crime, and (2) a lack of predisposition of the defendant to engage in criminal conduct. *United States v. Casanova*, 970 F.2d 371, 375 (7th Cir.1992).

▮ Torres' argument focuses on an alleged lack of predisposition. As evidence of his reluctance to become involved in a cocaine transaction, Torres presented a portion of a taped telephone conversation in which he told the government informant Salamanca that he preferred driving his taxi to spending twenty years in jail. A showing of mere initial reluctance to enter into a cocaine transaction with a particular informant is insufficient to show the general lack of predisposition to support an entrapment defense. Fear of getting caught is not sufficient to constitute lack of predisposition.

*United States v. Gabriel*, 810 F.2d 627, 638 (7th Cir.1987).

*United States v. Evans*, 924 F.2d 714, 717 (7th Cir.1991), a case relied upon by Torres, says that "[a] person who takes advantage of an ordinary opportunity to commit criminal acts—not an extraordinary opportunity, the sort of thing that might entice an otherwise law-abiding person—is not entrapped." Torres was offered ordinary payment to locate cocaine for the informant, and despite some verbal expressions of reluctance, he proceeded to do so.

As noted in the facts, the Government contends that Torres was to receive $2000 per kilogram. When the $2000 offer was made, Torres tried to locate a cocaine source through Oquendo and some other people, but he failed. Defendants say there is some evidence that the payment figure was later raised to $3000 per kilogram, although they concede that there is other evidence to the contrary. They cite Torres' testimony that the $3000 gave him more incentive to locate cocaine, but what Torres actually did was call Oquendo again, who still did not have a source. Then Ortiz, who had been listening to Oquendo's end of the conversation, said that he could find some. In any event, the extra money, if in fact it was offered and if in fact it did affect Torres' participation, was not such an amount that would support a defense of entrapment as discussed in *Evans*, 924 F.2d at 717.

The Supreme Court has held that simply offering the opportunity to commit a crime does not necessitate an entrapment instruction. *Jacobson v. United States*, —— U.S. ——, ——, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992) (citing *Mathews v. United States*, 485 U.S. 58, 66, 108 S.Ct. 883, 888, 99 L.Ed.2d 54 (1988)). That is all the government informants did in this case. Torres already had the means and ability to engage in a drug conspiracy. He did not need the government to provide him with the resources.

## III. Sufficiency of Evidence; Co-conspirator Statements

▮ Defendant Carlos Diaz claims that there was insufficient evidence to convict him

of conspiracy and that the district court's admission of co-conspirator statements against him. was therefore improper. The test in evaluating a defendant's challenge to the sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Burrell*, 963 F.2d 976, 987 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). The transaction took place at the apartment in which Diaz lived. There is testimony in the record that Diaz was present when the cocaine was inspected, that he then carried it into the bedroom when Feliciano told him to put it back where it came from, and that he was left alone with the buyer and the cocaine. Viewing this and other evidence in the light most favorable to the Government, we hold that a rational jury could have concluded that beyond a reasonable doubt Diaz was a knowing and active participant in the conspiracy.

This evidence was sufficient to support the determination by the trial judge of the defendant's membership in the conspiracy to furnish the basis for the admission of his co-conspirators' statements. *United States v. Santiago*, 582 F.2d 1128, 1134 (7th Cir.1978).

### IV. Managerial or Supervisory Increases in Sentences

■ Defendants Jose Ortiz and Ivan Correa argue that the district court erred. in finding that they were managers or supervisors, resulting in a three-level increase in their offense levels under United States Sentencing Guideline section 3B1.1(b) (Nov. 1991): "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." The increase made Ortiz' offense level 33, with a range of 135–168 months, and he received 135 months. The increase made Correa's offense level 35, with a range of 168–210 months, and he received 168 months.

The test is whether the district court's findings of fact as to the defendants' roles were clearly erroneous under the preponderance of evidence standard of proof. *United*

*States v. Spillman,* 924 F.2d 721, 723 (7th Cir.1991). The district court made detailed findings of fact regarding Ortiz' major, active role in the conspiracy, including his giving of orders to others. These findings are supported by the record, which contains testimony that Ortiz was in charge at the initial meeting with the buyers, asking whether they had the money and giving them instructions on where to be and when and how the transaction would be made. There was also testimony showing that Ortiz directed other participants, especially Oquendo. This evidence is sufficient for a three-level increase under section 3B1.1(b).

The district court found that Correa exercised control over and made decisions concerning the cocaine deal that formed the basis of the conspiracy. Evidence in the record supports this. For example, there was testimony that Correa determined that the transaction would be in his apartment. There it was Correa who asked to see the government agent's money. When the agent asked to see the cocaine, Correa responded that it was a few houses down and he brought one kilogram to show the agent. Later Correa told Feliciano to go get the rest of the cocaine. All of this evidence demonstrates Correa's control over the cocaine deal and supports the district court's determination that a three-level increase was proper under section 3B1.1(b).

AFFIRMED.