UNITED STATES of America

v.

Federico S. PIMIENTA, Lance Corporal
(E–3), U.S. Marine Corps.

NMCCA 200600788.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 10 June 2005.

22 May 2008.

For Appellant: LT Brian Mizer, JAGC, USN.

For Appellee: Capt Roger Mattioli, USMC; LT Derek Butler, JAGC, USN.

Before O'TOOLE, Chief Judge, FELTHAM, Senior Judge, and MITCHELL, Appellate Military Judge.

## PUBLISHED OPINION OF THE COURT

MITCHELL, Judge:

A general court-martial, consisting of officer and enlisted members, convicted the appellant, contrary to his court-entered pleas,[1]

1. The appellant was in an unauthorized absentee status during his trial. After the military judge determined the appellant's absence was voluntary and that he had been duly warned, pleas of

of making a false official statement and involuntary manslaughter, in violation of Articles 107 and 119, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 919. The appellant was sentenced to a dishonorable discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority (CA) mitigated the dishonorable discharge to a bad-conduct discharge, but otherwise approved the sentence as adjudged. In an act of clemency, the CA suspended confinement in excess of six years for a period of two years from the date of his action.

We have considered the record of trial, the six assignments of error,[2] the Government's response, the appellant's reply to the Government's response, and the oral argument in this matter.[3] We conclude that the findings and sentence are correct in law and fact and that no error was committed that was materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

The appellant was assigned to a Marine Division forward deployed to Camp Bull Dog, Bagram Airfield, Afghanistan. The appellant's primary responsibility was guard duty on the base perimeter. On 20 June 2004, after the appellant and his squad returned to the barracks from guard duty, he and three other Marines, Sergeant (Sgt) Scolly, Lance Corporal (LCpl) Groover, and LCpl White, watched the squad's weapons while other members took showers. Sgt Scolly exited the barracks to go to the head, leaving the other three Marines behind, cleaning weapons and talking amongst themselves. While cleaning his M–16 service rifle, LCpl Groover heard the "crack" of a weapon being discharged and looked up in the direction of the sound. He then turned to see that the M9 pistol in the appellant's possession had discharged, striking LCpl White in the left side of his head. LCpl Groover and the appellant ran out of the barracks looking for a corpsman to render medical assistance to LCpl White. The appellant frantically pleaded with LCpl Groover, "Don't tell anybody what happened; I'm going to jail; I'm going to jail. Just tell him [Sgt Scolly] that the pistol was laying [sic] on the rack, and it went off whenever I sat down." Record at 218. Medical assistance was provided to LCpl White, but he died as a result of his injury.

During the investigation into the death of LCpl White, the appellant told the Naval Criminal Investigative Service (NCIS) agent that he threw himself onto his rack and picked up the pistol. When he tried to sit up to place the pistol in its holster, the weapon discharged. The appellant additionally indicated that minutes before he picked the weapon up off the rack, LCpl White had it in his possession and had been playing with it, to include dry-firing it at the ceiling.

---

"not guilty" were entered on his behalf and he was tried *in absentia*.

2. I. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN, PURSUANT TO MRE 404(b), HE ALLOWED SEVEN WITNESSES TO TESTIFY THAT, ON PREVIOUS OCCASIONS, THEY HAD WITNESSED APPELLANT MISHANDLING HIS WEAPON?
II. WHETHER THE EVIDENCE IS FACTUALLY AND LEGALLY SUFFICIENT TO PROVE APPELLANT COMMITTED INVOLUNTARY MANSLAUGHTER?
III. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING INTO EVIDENCE, OVER DEFENSE OBJECTION, PHOTOGRAPHS OF LANCE CORPORAL WHITE'S BODY WHERE THE PREJUDICIAL IMPACT OF THE PHOTOGRAPHS OUTWEIGHED THEIR PROBATIVE VALUE?
IV. WHETHER THE TRIAL DEFENSE COUNSEL [sic] COMMITTED PROSECUTORIAL MISCONDUCT WHEN HE INTERJECTED HIS PERSONAL BELIEFS AS TO APPELLANT'S GUILT AND REPEATEDLY CALLED APPELLANT A LIAR DURING HIS CLOSING ARGUMENT?
V. WHETHER APPELLANT WAS DENIED HIS FIFTH AMENDMENT RIGHT TO REMAIN SILENT WHEN TRIAL COUNSEL COMMENTED ON THE DEFENSE'S FAILURE TO REBUT THE GOVERNMENT'S EVIDENCE?
VI. WHETHER APPELLANT SUFFERED PREJUDICIAL ERROR WHEN HIS TRIAL DEFENSE REVEALED PRIVILEGED COMMUNICATIONS WITHOUT APPELLANT'S PERMISSION DURING THE SENTENCING PHASE OF APPELLANT'S TRIAL IN VIOLATION OF MRE 502 AND 511?

3. This court granted appellant's request for oral argument on assignments of error I, II, and III.

### Military Rule of Evidence 404(b)

Over defense objection, and as part of the Government's case-in-chief, the military judge allowed the trial counsel to call seven junior Marines as witnesses to attest to the fact that they had seen the appellant handle his M9 pistol in an unsafe manner. Their testimony included that they had seen the appellant spin the weapon on his finger, remove it from its holster in "quick-draw" fashion, chamber a round in the weapon while in the barracks, and point the firearm at other Marines while it was loaded. One of these Marines testified that he counseled the appellant on safe weapon handling procedures after witnessing some of these improprieties. Additionally, in response to reports of the appellant mishandling his weapon, another Marine, Sgt Scolly, testified that he counseled the appellant on the proper handling of weapons.

In his first assignment of error, the appellant avers that admission of this evidence by the military judge was error. Specifically, the appellant contends that the evidence showing lack of mistake or accident is inadmissible unless the defendant specifically defends on that ground. In the case *sub judice,* the appellant rested his case at the end of the Government's case-in-chief, having put on no evidence. The appellant contends that because he did not raise mistake during trial, there was not a defense of lack of mistake or accident to rebut, and this evidence was, therefore, inadmissible. We disagree with both contentions.

**The Law**

MILITARY RULE OF EVIDENCE 404(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), provides:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

■ The test for admissibility of uncharged acts is "whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the fact finder infer that he is guilty, as charged, because he is predisposed to commit similar offenses." *United States v. Castillo,* 29 M.J. 145, 150 (C.M.A.1989); *see also United States v. Ruppel,* 49 M.J. 247, 250 (C.A.A.F. 1998); *United States v. Miller,* 46 M.J. 63, 65 (C.A.A.F.1997).

■ A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. McCollum,* 58 M.J. 323, 335 (C.A.A.F.2003). A military judge abuses his discretion if his findings of fact are clearly erroneous or if his conclusions of law are incorrect. *United States v. Ayala,* 43 M.J. 296, 298 (C.A.A.F.1995). In *United States v. Barnett,* 63 M.J. 388 (C.A.A.F.2006), our superior court summarized the required analysis for the admission of MIL. R. EVID. 404(b) evidence at trial using the test set out in *United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A.1989). First, the evidence must reasonably support a finding by the court members that the appellant committed prior crimes, wrongs or acts; second, the evidence must show a fact of consequence is made more or less probable by the existence of this evidence; and third, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *Barnett,* 63 M.J. at 394.

**Analysis**

■ In applying the *Reynolds* factors to the instant case, we find the testimony describing each incident of the appellant mishandling his weapon reasonably supports a finding by the court members that the appellant committed each of these alleged prior acts. We next address whether this evidence makes a fact of consequence more or less probable. In doing so, we concur with the appellant that involuntary manslaughter is not a specific intent crime; rather, it requires that the appellant act with culpable negligence.[4] The military judge admitted ev-

---

4. Culpable negligence is defined as a degree of carelessness greater than simple negligence. It

idence of these past incidents, in part, to demonstrate the appellant's knowledge of the required weapons handling procedures. We find that the appellant's level of knowledge regarding weapons safety was a fact of consequence the Government was required to prove beyond a reasonable doubt. Finally, we note that the military judge conducted the appropriate MIL. R. EVID. 403 balancing test and found that the probative value was not substantially outweighed by the danger of unfair prejudice.

We disagree with the appellant that the defense of mistake or accident was not raised. Statements made at trial by the trial defense counsel to the members, as well as the evidence adduced at trial through the cross-examination of LCpl Groover, raised the defense that the fatal discharge of the weapon was accidental.[5] In his opening statement, the trial defense counsel told the members that "[w]hat happened in Bagram, Afghanistan, that day certainly is a tragic mistake ..." and "this was a tragic, tragic accident." Record at 164–65. In the cross-examination of LCpl Groover, the only remaining Marine in the barracks besides the appellant and the victim at the time the weapon discharged, the trial defense counsel asked if he thought the shooting was an accident. LCpl Groover responded in the affirmative. *Id.* at 226. Additionally, the appellant's statements to NCIS investigators indicated that the weapon discharged when the appellant picked it up off the rack and tried to sit up to put it in its holster. Although this evidence was offered by the Government (Prosecution Exhibit 4), it was the appellant's own statement and represented the only eyewitness account of the tragic event.[6] Finally, the trial defense counsel, in closing argument, again argued that this was a "tragic accident." Record at 352. We find that defense arguments and focus on cross-

examination sufficiently raised the defenses of mistake or accident, entitling the prosecution to present evidence to rebut the defense.

With the defense of accident having been sufficiently raised, the military judge allowed the Government, over defense objection, to call these different witnesses to testify to various incidents of the appellant mishandling his weapon. The military judge properly considered the admissibility of this evidence under the substantive provisions of MIL. R. EVID. 404(b) and correctly determined that the testimony was admissible for a non-character purpose, that is, proving lack of accident or mistake. He then conducted a MIL. R. EVID. 403 balancing and excluded one witness' testimony as more prejudicial than probative because it contained the possibly inflammatory characterization of the appellant acting like a "gangsta." Thereafter, the military judge more broadly concluded that several witnesses' testimony about instances of the appellant mishandling his weapon provided "context" for other testimony of similar mishandling incidents during which, or immediately following which, he was counseled.

We additionally note that even when uncharged misconduct or other bad acts are admissible for a legitimate purpose, the evidence must be carefully controlled due to its "great potential for creating inferences about an accused's guilt based on his character." *United States v. Levitt*, 35 M.J. 114, 119 (C.M.A.1992). For example, in this case the members might have been tempted to infer from the testimony about the appellant's mishandling of his weapon that he was a habitual scofflaw and, therefore, probably committed the crimes under consideration.

We agree with the military judge that the witnesses who saw the appellant improperly handling his weapon, and who immediately

---

is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), Part IV, ¶ 44.

**5.** There is nothing in the record to suggest that the appellant's actions were intentional, i.e., that he intended to discharge the weapon or to cause the death of LCpl White. The appellant, in his statement to investigators, maintained that the

weapon, which was lying on his rack, accidentally discharged when he sat up on his rack to place the pistol back in its holster.

**6.** Even though LCpl Groover was also in the barracks at the time of the event, he testified that he was cleaning his M16 service weapon and did not witness the discharge of the M9 in the appellant's possession.

counseled him (or reported him, resulting in timely counseling) are highly probative of his knowledge and training, both regarding what is required of him and of the consequences of mishandling a weapon. Thus, they are also highly probative of the lack of accident or mistake on his part and the probative value outweighs any danger of unfair prejudice, especially in view of the military judge's limiting instruction on the use of the testimony. However, those several witnesses who observed the appellant twirling his weapon or engaging in other similar acts, but did not report it or correct him, are less probative of a lack of mistake than those instances accompanied by immediate remedial action. Each of these witnesses with substantially similar testimony is also successively less probative as compared to the increasing risk of unfair prejudice that could result from the cumulative effect of multiple witnesses testifying about the appellant's other misconduct. At some point, the danger of unfair prejudice outweighs the probative value of such cumulative testimony. *United States v. Beechum,* 582 F.2d 898, 916 (5th Cir.1978)(en banc)(admitting evidence after evaluating incremental probity). A proper balancing under MIL. R. EVID. 403 should address this aspect of incremental probity to cumulative prejudice.

In this case, however, it is unnecessary to determine whether the testimony of five witnesses, for example, was properly admitted, but the sixth one was error. Any error is harmless. The military judge excluded the only inflammatory testimony and the information contained in the similar testimony was otherwise before the members to establish the element of the charge. Furthermore, the military judge properly provided a tailored limiting instruction on the permissible—and impermissible—use of this testimony, an instruction we know the members assiduously followed. We are satisfied that they did not improperly consider the repetitious testimony of other misconduct as evidence of the appellant's general bad character or of a propensity to mishandle his weapon because, had they done so, they would not have acquitted him of charges related to pointing a loaded gun at Cpl Dunton (Charges III and IV).

Assuming *arguendo,* that mistake or accident was not adequately raised by the defense, the trial counsel was not precluded from using this evidence to establish his case-in-chief. The Supreme Court unequivocally determined that evidence of intent and lack of accident may be admitted, regardless of whether a defendant argues lack of intent, because every element of a crime must be proven by the prosecution. *Estelle v. McGuire,* 502 U.S. 62, 69, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)(citing *Mathews v. United States,* 485 U.S. 58, 64–65, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)). Additionally, our superior court in *United States v. Harrow,* 65 M.J. 190 (C.A.A.F.2007), specifically addressed this issue in interpreting *Estelle* by holding:

> This Court's intermittent efforts to distinguish *Estelle* as a Supreme Court case addressing state, rather than federal, law does not detract from the force of the basic tenet asserted by the Supreme Court: "A simple plea of not guilty ... puts the prosecution to its proof as to all elements of the crime charged...."

*Harrow,* 65 M.J. at 202 (quoting *Mathews,* 485 U.S. at 64–65, 108 S.Ct. 883).

We find that the military judge did not abuse his discretion in allowing the aforementioned testimony into evidence in accordance with MIL. R. EVID. 404(b) to rebut lack of mistake or accident under proper limiting instructions. Additionally, we specifically find that even if accident or lack of mistake was not adequately raised by the defense, the prosecution could introduce this evidence to prove culpable negligence, an element of the offense the Government had to prove beyond a reasonable doubt. Accordingly, we find this assignment of error to be without merit.

### Factual and Legal Sufficiency

In his second assignment of error, the appellant avers that the evidence was factually and legally insufficient to support a conviction for Charge II, involuntary manslaughter.

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United*

*States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed,* 51 M.J. 559, 561–62 (N.M.Crim.Ct.App.1999), *aff'd,* 54 M.J. 37 (C.A.A.F.2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325; *see also* Art. 66(c) UCMJ.

A conviction of involuntary manslaughter requires proof beyond a reasonable doubt:

 (1) That a certain person is dead;

 (2) That the death resulted from the act or omission of the accused;

 (3) That the killing was unlawful; and

 (4) That this act or omission of the accused constituted culpable negligence.

MCM, Part IV, ¶ 44b(2)

In looking at the evidence adduced at the appellant's trial, there is no dispute that the death of LCpl White was caused by the M9 pistol that discharged while it was in the appellant's possession. The only Marines in the immediate area were the victim, the appellant and LCpl Groover. LCpl Groover testified that while they were sitting in the barracks, LCpl White never touched the appellant's pistol. Record at 219. Additionally, after the weapon discharged, the appellant frantically attempted to get LCpl Groover to lie for him. The appellant told LCpl Groover, "Don't tell anybody about what happened, I'm going to jail; I'm going to jail. Just tell [Sgt Scolly] that the pistol was laying on the rack, and it went off whenever I sat down." *Id.* at 218. To refute this latter assertion, Mr. Michael Brooks, of the United States Army Criminal Investigation Laboratory, testified that he inspected the weapon; it was in proper working order; and that the only

way to fire the weapon would be to have a round in the chamber, the safety off, and to pull the trigger. *Id.* at 258–61. He additionally testified that the weapon would not have discharged by someone jumping on a cot where the weapon lay. *Id.* at 260–61. Because the projectile struck the victim on the left side of the head, the weapon had to be pointed in LCpl White's direction at the time of discharge. The appellant's actions of bringing a loaded weapon in the barracks and pointing it at LCpl White were violations of standing orders and procedures that directly contributed to his fatal wounds.[7] Finally, the record was replete with testimony that the appellant was familiar with the weapon and handling procedures because he taught the same to other Marines.

Based on the entire record of trial, we find that a reasonable finder of fact could have found that the evidence established each of the elements of Charge II and its specification beyond a reasonable doubt. Taking into account the fact that we did not see and hear the witnesses, we too are convinced beyond a reasonable doubt that the appellant is guilty of Charge II and its specification.

### Admitting Photographs of the Deceased into Evidence

The appellant's third assignment of error avers that the military judge abused his discretion in admitting, over defense objection, post-mortem and autopsy photographs of LCpl White's body and skull.[8] The appellant argues that the prejudicial impact of the photographs outweighed their probative value. We disagree.

█ It is well-settled that photographs are not admissible for the illegitimate purpose of inflaming or shocking the court-martial. If "the item of proof is admissible for a legitimate purpose, the fact that it also may possi-

---

7. Aside from weapon clearing procedures, the Marines' standing orders were to: treat very weapon as if it was loaded; never point the weapon at something you don't intent to shoot; keep your finger off the trigger until ready to fire; and keep the weapon on safe until ready to fire. Additionally, while in the barracks, weapons were to be in condition four: no magazine inserted, no round in chamber, weapon on safe. Record at 220–21.

8. There were a total of 14 photographs entered into evidence: PE 2 contained nine photographs, five of which (1–5) were admitted over objection by trial defense counsel (there was no objection to pictures 6–9); PE 8 contained five photographs which were also admitted over defense objection. The remaining 15 photographs offered by the trial counsel were not admitted.

bly tend in this undesirable direction is, in and of itself, *no ground for reversal.*" *United States v. Bartholomew*, 3 C.M.R. 41, 48, 1952 WL 1828 (C.M.A.1952). A military judge has wide discretion to determine whether the probative value of a piece of evidence is substantially outweighed by the danger of unfair prejudice. MIL. R. EVID. 403,; *see United States v. Yanke*, 23 M.J. 144, 145 (C.M.A.1987). The military judge's decision to admit or reject photographs into evidence should not be disturbed in the absence of a clear showing of abuse of discretion. *United States v. Mobley*, 28 M.J. 1024, 1029 (A.F.C.M.R.1989), *set aside on other grounds*, 31 M.J. 273 (C.M.A.1990).

 At the appellant's trial, the prosecution offered a number of post-mortem photographs of the deceased, many of which were taken by the coroner in various stages of the autopsy. The military judge admitted approximately one-half of the proffered photographs, finding that the probative value outweighed any prejudicial effect. While the appellant contends that all of the pictures contained in Prosecution Exhibits 2 and 8 should not have been admitted, he avers he was particularly prejudiced by PE 2, page 1, which depicted the deceased lying on a coroner's table with a metal rod extending from the left side of his head through his right arm, raised over his head. The picture was offered by the trial counsel to illustrate the trajectory and the entry and exit of the fatal shot. The trial defense counsel objected to its admissibility on the grounds that it would be cumulative with the attending coroner's testimony. After determining that the picture was to be used by the coroner to demonstrate the trajectory of the bullet, the military judge found the highly probative value of the photographs was not substantially outweighed by the danger of unfair prejudice and admitted it as evidence. Record at 197–98.

The remaining pictures admitted by the military judge in PE 2, pages 1–5, were also used to assist the coroner to explain and illustrate his testimony and expert opinion to the court members. Accordingly, we conclude that these photographs were introduced for a legitimate purpose and aided the fact-finding process by making the medical testimony easier to understand. The military judge again found that the probative value of these pictures outweighed the danger of unfair prejudice. The defense offered no objection to PE 2, pages 6–9, and we do not find admission of these pictures constituted plain error. The remaining photographs admitted as PE 8 were photographs of the deceased in the field hospital shortly after the fatal shot and were probative as to what steps were taken to attempt to save his life.

We find no abuse of discretion by the military judge in admitting the photographs contained in PE 2 and 8. We have looked at the photographs and agree with the military judge's decision. Accordingly, we find this assignment of error to be without merit.

### Prosecutorial Misconduct

We will consider the appellant's next two assignments of error together as they both allege improper argument by the trial counsel during summation to the members. In his fourth assignment of error, the appellant contends that the trial counsel committed prosecutorial misconduct when he interjected his personal beliefs as to appellant's guilt and repeatedly labeled him a liar. The appellant's fifth assignment of error avers that the trial counsel erroneously commented on the defense's failure to rebut the Government's evidence thereby denying the appellant his constitutional right to remain silent. As to his latter assigned error, a timely objection was made by the trial defense counsel and sustained by the military judge.

### The Law

With regard to the appellant's fourth assignment of error, the failure of the trial defense counsel to object to the argument of the trial counsel constitutes forfeiture of the issue on appeal in the absence of plain error. RULE FOR COURTS-MARTIAL 919(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed); *see United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F.2007), *cert denied*, — U.S. ——, 128 S.Ct. 424, 169 L.Ed.2d 267 (2007); *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F.2005). To prevail under a plain error analysis, the appellant must persuade this court that: (1) there was error; (2) the error was plain or obvious; and (3) the error

materially prejudiced a substantial right. *Id.* (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F.2000)). In applying the law to the facts of this case, the trial counsel's comments must be examined in context of the entire court-martial. *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F.2005).

### a. Referring to the appellant as a liar

■ Our superior court has held that calling the accused a liar is a "dangerous practice" which should be avoided. *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A.1983). In the case at bar, the trial counsel used the term "lies" or "lie" multiple times when referring to the appellant and the sworn statement he gave to NCIS.

■ In addition to manslaughter, the appellant was also charged with, *inter alia*, making a false official statement to NCIS surrounding his involvement in the death of LCpl White. The major premise by the appellant at trial was that LCpl White's death was an accident; specifically that the weapon misfired when he picked it up off his rack and tried to sit up. This is the same statement he gave to NCIS and was the basis for his being charged with making a false official statement. In order to establish a *prima facie* case on this charge, the trial counsel had to prove that the statement the appellant made to NCIS was in fact false, that is, that the appellant had lied in his statement. One would, therefore, expect the trial counsel to address the falsity of the statement during closing argument. We find that trial counsel's comments were based on a fair reading of the record and the evidence adduced at trial, particularly as it related to proof of a false official statement. We, therefore, find if this was error, it does not rise to the level of plain error.[9]

### b. Interjection of trial counsel's personal views

During his closing argument, the trial counsel interjected the personal pronoun "we" often in his argument and referred to the evidence as "wrapped ... up into this nice tight little bow for you." Record at 361.

■ The appellant again cites our superior court's holding in *Fletcher* to support his contention that this was error. The court in *Fletcher* held that the trial counsel should not interject his or her personal beliefs and opinions regarding the evidence adduced at trial. The court found plain error when the trial counsel "repeatedly inserted herself into the proceedings by using the pronouns 'I' and 'we'." *Fletcher*, 62 M.J. at 181. In doing so "[s]he put the authority of the Government and her office behind the prosecution's witnesses...." *Id.* In *Fletcher* however, the trial counsel repeatedly vouched for the credibility of the Government's witnesses and evidence; she interjected her personal views of the evidence and told the members the accused was "guilty;" and she made references to the Government's evidence as "unassailable, fabulous and clear" and described the defense's evidence as "unbelievable, ridiculous and phony." *Id.* at 180. Trial counsel's comments in the case *sub judice* are not as egregious as the trial counsel's were in *Fletcher*. We also note that the military judge correctly instructed the members that arguments of counsel are not evidence. Assuming *arguendo* that this part of the argument was improper, it was not so improper as to elicit a defense objection. We are convinced beyond a reasonable doubt that any error was harmless and that the appellant suffered no material prejudice to his substantial rights. Accordingly, we find this assignment to be without merit.

### c. Commenting on the appellant's right to remain silent

Finally, the appellant contends that the trial counsel engaged in improper argument by saying to the members, "We have

9. We note that the appellant cites our superior court's decision in *United States v. Fletcher*, 62 M.J. 175 (C.A.A.F.2005) to support his contention. That court similarly addressed the issue of the prosecutor referring to the appellant as liar during closing argument without objection from the defense. The court in *Fletcher* specifically did not find plain error and concluded, "Although the trial counsel should have avoided characterizing Fletcher as a liar ... her comments were not so obviously improper as to merit relief in the absence of defense an objection from counsel." *Id.* at 183.

shown—and there hasn't been any evidence presented to the contrary—that [LCpl] Pimienta shot [LCpl] White." Record at 141. The military judge sustained the defense's objection to that statement. The appellant claims that this constituted an improper comment on the appellant's failure to testify. In light of the fact that proper objection was made at the trial level, we now review for prejudicial error. Art. 59, UCMJ; *Fletcher*, 62 M.J. at 179.

▉▉▉▉ It is well-established that a trial counsel may not comment upon the fact that an accused did not testify in his own defense, either "directly, indirectly or by innuendo." *United States v. Mobley*, 31 M.J. 273, 279 (C.M.A.1990)(citing *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)). Commenting on the evidence using terms such as "unchallenged and undisputed," however, are not indirect comments on a accused's silence "absent other circumstances" that "so color the reference as to make the implication apparent." *United States v. Saint John*, 48 C.M.R. 312, 315, 1974 WL 13823 (C.M.A.1974).

▉▉▉ Viewed in context, the trial counsel's argument did nothing more than reflect the state of the evidence and the strength of the Government's case, and was a clear attempt to focus the member's attention on the issue in contention: specifically, that the death of LCpl White was caused by the culpable negligence of the appellant. We note that this isolated comment appears once in over 16 pages of Government argument in the record, including rebuttal. We additionally note that the trial defense counsel appears to concede the trial counsel's point that the appellant shot the victim (LCpl White) by arguing to the members, " . . . there isn't any real dispute of the facts concerning the evidence that was presented against [the appellant] regarding [LCpl] White." Record at 352. Finally, we note that the military judge instructed the members not only that the accused has a right to remain silent, but further admonished the members that they are to take no adverse inference from the fact that the appellant was not present during trial. *Id.* at 375. The trial defense counsel, apparently satisfied with the military judge's actions, did not request additional corrective instructions.

Although not raised as error, we additionally find that trial counsel's limited comments did not shift the burden to produce evidence to the defense. *United States v. Mason*, 59 M.J. 416, 424 (C.A.A.F.2004). Moreover, the military judge correctly instructed the members on the burden of proof, thereby curing any possible prejudice attributable to these isolated comments. We are convinced beyond a reasonable doubt that the appellant suffered no error materially prejudicial to his substantial rights.

▉▉▉ With regard to the assertion that the trial counsel's comments were prosecutorial misconduct, we note that prosecution misconduct is "action or inaction by the prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional canon." *United States v. Rodriguez-Rivera*, 63 M.J. 372, 378 (C.A.A.F.2006) (citations and internal quotation marks omitted). We find that the instances of argument cited by the appellant do not rise to the level of prosecutorial misconduct either individually or collectively, and they merit no relief.

The appellant's remaining assignment of error is without merit. Accordingly, the findings and sentence, as approved by the convening authority, are affirmed.

Chief Judge O'TOOLE and Senior Judge FELTHAM concur.