DECISION AND JUDGMENT
{¶ 1} Appellant, Ryan Justice, appeals the judgment of the Huron County Court of Common Pleas, which, after a jury trial, convicted him of trafficking in heroin, a violation of R.C. 2925.03(A)(1), (C)(6)(a), and a felony of the fifth degree. The trial court imposed a sentence of 11 months incarceration. *Page 2 
 {¶ 2} At trial, the state presented evidence that appellant had sold heroin to Matthew Fortner, a confidential informant ("CI") working with the Norwalk Police Department and Detective Sergeant Todd Temple. In 2006, Fortner had volunteered to become a CI after discovering that he (Fortner) had sold heroin to undercover agents working with the Norwalk Police Department in three controlled buys. Detective Temple and the Huron County Prosecutor's Office proposed that if Fortner would make nine controlled buys of illegal drugs from other suspects, no charges for trafficking would be brought against him.
 {¶ 3} In furtherance of that agreement, Fortner arranged several controlled buys from various individuals. Fortner knew appellant from previous dealings in heroin, and Fortner arranged a controlled purchase of heroin from appellant on April 13, 2006.
 {¶ 4} Fortner contacted Detective Temple and informed him that appellant had agreed to sell him two "balloons" of heroin for $100; the controlled buy was arranged to occur at appellant's home in Norwalk, Ohio. Consistent with established procedure for controlled buys, Detective Temple and Detective Horvatich met Fortner, searched Fortner's person and vehicle, supplied him with "buy money," a digital recording device and a transmitter.
 {¶ 5} Detectives Temple and Horvatich followed Fortner to appellant's house, maintained surveillance, and listened to the transaction via the transmitter. After the buy, Fortner left appellant's residence, followed by the detectives; they met immediately afterwards, and Fortner gave them the heroin purchased from appellant. Fortner was paid $20 for his participation. *Page 3 
 {¶ 6} The balloons Fortner purchased yielded 0.24 grams of heroin, according to laboratory testing. The laboratory report, pictures of the two balloons containing the heroin, and a compact disc recording of the controlled buy were submitted into evidence.
 {¶ 7} Fortner also testified to his role in the controlled buy of heroin from appellant. He admitted that he had been addicted to heroin while he was trafficking and in 2006, using on a "good day" about five balloons. He also admitted to pleading guilty to one count of trafficking in heroin; he was sentenced to a community-based correction facility and has since tested negative for heroin use according to the terms of his probation.
 {¶ 8} Fortner testified to knowing appellant for "maybe a month" before arranging the controlled buy of heroin, but later clarified that he had known appellant for almost four months. During his testimony, the prosecution played the digital recording of the controlled buy. Fortner asserted that he handed appellant $90 and that appellant gave him the two balloons of heroin.
 {¶ 9} Fortner explained that he knew that appellant would sell him the two balloons of heroin to support appellant's own addiction. Fortner also admitted to having sold appellant heroin in the past and to traveling with appellant to Toledo, Ohio, to pick up heroin to use and sell. He repeatedly asserted that he made no promises or threats to appellant in order to entice appellant to sell the heroin to him.
 {¶ 10} At the close of the state's case-in-chief, appellant moved for an acquittal based on insufficient evidence, which was promptly denied. Appellant then testified; he *Page 4 
discussed his heroin addiction, his relationship with Fortner, and the controlled buy. Fortner and appellant would habitually drive to Toledo approximately once per week to buy heroin and cocaine; according to appellant, they had traveled to Toledo to obtain heroin just prior to Fortner calling appellant to set up the buy.
 {¶ 11} With respect to the April 13, 2006 transaction, appellant denied handing Fortner the heroin or receiving money from Fortner. He explained that Fortner, after a trip to Toledo, would leave his heroin at appellant's residence and "would come back there all the time to get his dope." Appellant did not know whose voices belonged to whom on the digital recording, and did not outright deny that he sold heroin; rather, he argued that Fortner arranged for appellant to sell to him:
 {¶ 12} "Q. Okay. So, as you sit here today you're not admitting that you made that sale to Matt Fortner?
 {¶ 13} "A. I'm not denying. I'm not saying that at all. I'm saying — what I'm saying is he called me and wanted the dope that he just went and got, is what I'm saying.
 {¶ 14} "Q. Okay. * * * [Fortner] testified that he gave you $90, hand-to-hand to you, and that you gave him the two balloons of black tar heroin that are right up here now in State's Exhibit 1 after they went down to the lab. Okay?
 {¶ 15} "A. I see that.
 {¶ 16} "Q. But are you denying that today?
 {¶ 17} "A. No, sir.
 {¶ 18} "Q. So, you did do it? *Page 5 
 {¶ 19} "A. No. I'm not saying I did it. Well, I heard on the tape, he said here's $90, and he never put $90 in my hand is what I'm saying. Never did. He never put money in my hand. I always put money in his hand.
 {¶ 20} "Q. You put two balloons of black tar heroin in his hand?
 {¶ 21} "A. No, he knew right where to go, where the dope was. He knew right where it was, because he kept it there."
 {¶ 22} Appellant argued that he was entitled to have the jury instructed on entrapment, and the state opposed the instructions, arguing that appellant had not admitted to selling heroin. The trial court held that entrapment instructions were inappropriate, given the evidence; specifically, the court held that Fortner did nothing further than provide the opportunity for appellant to commit the offense. Appellant preserved his objection for the record.
 {¶ 23} Appellant timely appealed as of right, and now asserts the following sole assignment of error:
 {¶ 24} "The Trial Court erred to the prejudice of Defendant-Appellant when it refused to give the jury instruction on entrapment."
 {¶ 25} We review the trial court's decision to refuse the requested jury instructions for an abuse of discretion. State v. Wolons (1989),44 Ohio St.3d 64. A court's instructions to a jury "should be addressed to the actual issues in the case as posited by the evidence and the pleadings." State v. Guster (1981), 66 Ohio St.2d 266, 271. In order for a defendant to have the jury instructed on an affirmative defense, the defendant *Page 6 
must introduce sufficient evidence to "raise a question in the minds of reasonable" jurors concerning the defense. State v. Melchior (1978),56 Ohio St.2d 15, paragraph one of the syllabus.
 {¶ 26} "The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." State v.Doran (1983), 5 Ohio St.3d 187, paragraph one of the syllabus. Pursuant to R.C. 2901.05(C)(2), entrapment is an affirmative defense. Id. at paragraph two of the syllabus. The defense is defined subjectively. Id. at 191. Thus, "where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute, the defense of entrapment is established and the accused is entitled to acquittal. Sherman v. United States (1958),356 U.S. 369, 372; Sorrells v. United States (1932), 287 U.S. 435, 442. However, entrapment is not established when government officials `merely afford opportunities or facilities for the commission of the offense' and it is shown that the accused was predisposed to commit the offense.Sherman, supra, 356 U.S. at 372." Id. at 192.
 {¶ 27} The state initially argues that appellant was precluded from raising the entrapment defense unless he first admitted to committing the offense, citing the following passage from Doran:
 {¶ 28} "When an accused raises the defense of entrapment, the commission of the offense is admitted and the accused seeks to avoid criminal liability therefor by *Page 7 
maintaining that the government induced him to commit an offense that he was not predisposed to commit. In this sense, entrapment is the classic confession and avoidance [defense] * * *." Doran, 5 Ohio St.3d at 193.
 {¶ 29} In response, appellant argues that since Doran, the United States Supreme Court has held that, under federal rules, a defendant may deny one or more elements of the crime and still be entitled to a jury instruction on entrapment if sufficient evidence was presented from which a reasonable jury could find entrapment. In Matthews v. UnitedStates (1988), 485 U.S. 58, the defendant had refused to admit that he committed all the elements of the crime of accepting a bribe but still requested an entrapment instruction. The trial court, and the United States Court of Appeals for the Seventh Circuit, refused to allow the defendant to raise the entrapment defense and be entitled to a jury instruction if he refused to admit to each element — including the requisite mental state — for the crime charged.
 {¶ 30} Noting that, "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor," and that defendants are allowed to raise inconsistent defenses, the Court held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment."Matthews, 485 U.S. at 62.
 {¶ 31} Ohio courts have applied Matthews' rule to find that a defendant need not take the stand in contravention of his Fifth Amendment right against self-incrimination to *Page 8 
assert entrapment, State v. Charlton (Oct. 17, 2001), 9th Dist. No. 00CA007718; to hold that a defendant could raise both the defense of entrapment and his argument that the substance in which he allegedly trafficked was not cocaine, State v. Bowshier, 2d Dist. No. 06-CA-41,2007-Ohio-5364; and, presented with an identical issue to the case sub judice, to hold that the defendant was not entitled to entrapment instructions. State v. Howell (Nov. 17, 1998), 4th Dist. No. 97CA824.
 {¶ 32} The state also cites this court's decision in State v.Hill, 6th Dist. No. OT-04-035, 2005-Ohio-5028, in support of its proposition that a defendant can only raise the defense of entrapment if he has already admitted the elements of the offense. This reliance is misplaced. In Hill, the trial court gave the jury lengthy instructions on entrapment; the defendant argued on appeal that the jury's rejection of his defense was against the manifest weight of the evidence. In explaining the nature of the entrapment defense, we quoted State vEdwards, 6th Dist. No. L-00-1161, 2003-Ohio-571, ¶ 35: "Entrapment is a `confession and avoidance' defense in which the defendant admits committing the acts charged, but claims that the criminal design arose with the state's agent * * *. The primary consideration in any determination of entrapment is the defendant's predisposition to commit the crime." Hill, 2005-Ohio-5028, ¶ 38.
 {¶ 33} Edwards confronted the question of whether the defendant's trial counsel was ineffective for failing to prove that the defendant was entrapped. It squarely held, "the defense of entrapment is inapplicable to this case since the accused must admit his participation in the conspiracy and then show that he lacked the predisposition to commit *Page 9 
the offense." Edwards, 2004-Ohio-571, ¶ 35. In doing so, however, it relied upon Doran and post-Doran cases and did not addresspost-Matthews cases.
 {¶ 34} State v. Bowshier, supra, noted that, while other state's courts refuse to apply Matthews because it was not based on constitutional grounds, Ohio does not require defendants to admit to the charged offense before being allowed to assert entrapment.
 {¶ 35} Although both the state and appellant urge us to decide whetherMatthews is applicable, we need not confront this issue at this time. Unlike Matthews, the trial court denied appellant's request for entrapment instructions on alternative grounds-specifically, that the evidence showed that the CI merely presented an opportunity for appellant to commit the offense. Further, the state aptly characterized appellant's argument as a "framing" argument, not an entrapment argument. We need decide whether Matthews is applicable only in a case where the defendant raised sufficient evidence regarding entrapment to be entitled to jury instructions, yet the defendant refused to admit he committed the offense. As in Howell, supra, insufficient evidence was presented to raise a question as to whether the government induced the offense. "[E]vidence that Government agents merely afforded an opportunity or facilities for the commission of a crime would be insufficient to warrant such an instruction [on entrapment]."Matthews, 485 U.S. at 66.
 {¶ 36} Therefore, upon review of the evidence adduced at trial, we hold that the trial court properly exercised its discretion in refusing to instruct the jury on entrapment *Page 10 
since, given the evidence, no question could have been raised in reasonable minds as to whether the criminal design underlying appellant's offense originated with the state. This conclusion holds regardless of whether appellant had admitted the offense or whether we apply Matthews.
 {¶ 37} For the foregoing reasons, appellant's assignment of error is not well-taken. The judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski P.J., William J. Skow, J., Thomas J. Osowik, J. Concur. *Page 1