In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2761

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

SCOTT GUSTIN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:09-CR-10019-002—**Michael J. Reagan**, *Judge*.

ARGUED MAY 9, 2011—DECIDED JUNE 7, 2011

Before EASTERBROOK, *Chief Judge*, and WOOD and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. A jury concluded that, while confined at a federal prison, Scott Gustin and a confederate stabbed and wounded another inmate. Gustin was convicted of attempted murder, 18 U.S.C. §113(a)(1), and sentenced to life imprisonment. His defense at trial was that he did not attack the victim, who deliberately misidentified him as the aggressor in order

to settle a score among gangs and protect the true per-petrator. The attack occurred in a common area, so other inmates could have been responsible, but the jury believed the victim, and other evidence also supports the conviction.

After Gustin appealed, we appointed new counsel to advocate his interests. Gustin's new lawyers make a single argument: That the district judge should have disallowed Gustin's actual defense and insisted that he raise a different one: entrapment. Technically Gustin could have argued entrapment while denying that he attacked the victim, see *Mathews v. United States*, 485 U.S. 58 (1988), but inconsistent defenses usually are the func-tional equivalent of a guilty plea. In *Mathews* itself, the defendant admitted that he had committed the charged acts but contended that he lacked criminal intent, in part because of entrapment. Since *Mathews* we have never seen any defendant argue: "I didn't do it, but if I did I was entrapped." So appellate counsel is effectively contending that the trial judge was obliged to override the defense strategy of denying that Gustin stabbed the victim. Appellate counsel suggests "outrageous governmental conduct" as a separate defense, but it is not one this circuit recognizes, see *United States v. Van Engel*, 15 F.3d 623, 631 (7th Cir. 1993); *United States v. Olson*, 978 F.2d 1472 (7th Cir. 1992), and in the circum-stances would have come to the same thing as entrap-ment. Failure to remake the defense as one based on entrapment was plain error by the court, appellate counsel insist.

A proposal that a district judge must force counsel to present an entrapment defense is defective at the level of both theory and practice. We start with theory.

Every criminal defendant has a right, in consultation with counsel, to choose a line of defense. See *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). Judges must not interfere. As a rule, judges should not even inquire why the defense follows a particular approach. Inquiry might breed distrust between lawyer and client, while providing the prosecutor with valuable information that he could not obtain via discovery. See *Taylor v. United States*, 287 F.3d 658, 662 (7th Cir. 2002). After all, an accused's trial strategy, and the reasons for it, are covered by the attorney-client privilege and the work-product privilege. Perhaps a judge would not err by reminding defense counsel that exploring the possibility of an entrapment defense could help. But the judge would rarely know enough before trial to advise defense counsel about the best lines of argument—and it is not a judge's job to assist one advocate at another's expense.

Gustin's appellate counsel do not contend that the judge should have made a suggestion before trial; they think that the judge should have intervened *at* trial. By then, however, defense strategy is set, and the risk of disruption (and inciting distrust) is substantial. More than that: introducing entrapment as a defense at trial not only undermines the defense plan but also hands a weapon to the prosecutor. For, when entrapment is at issue, the prosecutor must establish that the accused was predisposed to commit the unlawful acts. See *Jacobson*

*v. United States*, 503 U.S. 540 (1992). To demonstrate predisposition, the prosecutor can introduce evidence about the accused's character and criminal history, subjects that otherwise would be off limits. See, e.g., *United States v. Bastanipour*, 41 F.3d 1178, 1183 (7th Cir. 1994). Few defendants willingly open this door, and *no* defendant would want a judge to invite evidence of predisposition by injecting entrapment into a case spontaneously.

These considerations lead us to conclude that it can never be error, let alone plain error, for a district judge to permit defense counsel to omit an entrapment defense. If an entrapment defense offers the best chance of acquittal, its omission could reflect ineffective assistance of counsel, but it could not demonstrate *judicial* error. Gustin does not contend that his trial lawyer furnished substandard assistance, and at all events an argument along these lines is best reserved for a collateral attack. See *Massaro v. United States*, 538 U.S. 500 (2003). We have not found any appellate decision, in the history of this nation's jurisprudence, holding that a trial court committed plain error by neglecting to instruct the jury on an entrapment defense never raised by the defendant or his lawyer. Our case will not be the first.

So much for theory. Practice is equally dispositive against Gustin's current argument. He is a member of Nuestra Familia, a gang based in northern California. The victim was a member of the Sureños, a gang from southern California. The Sureños are enemies of the Norteños, a gang that has an alliance with Nuestra Familia. Gustin contends, and the prosecutor does not deny,

that the constitution and democratically elected leadership of Nuestra Familia require its members to kill members of the Sureños on sight—or be killed themselves. (That a criminal gang has a constitution and practices internal democracy would not be a surprise to a reader of Peter T. Leeson, *The Invisible Hook: The Hidden Economics of Pirates* 23–44 (2009).) Gustin's appellate lawyers contend that putting a member of the Sureños in the same cell as Gustin compelled him to attack and thus should be equated to governmental inducement to do so.

The federal prison in Pekin, Illinois, where this crime occurred, has experienced conflict among members of different gangs. Assigning each gang to its own cellblock could reduce inter-gang violence, but at the expense of allowing one gang to dominate each cellblock. That not only would undercut the authority of the warden and guards but also would imperil non-members of gangs, for they would be in hostile territory without allies. Considerations such as these underlay an argument that the Constitution *forbids* what Gustin's appellate lawyer thinks it *requires*: reserving cellblocks for members of single gangs, which also entails segregation by race and national origin. Yet we have held that the Constitution leaves to the sound discretion of prison officials how to deal with gangs in prison. See *David K. v. Lane*, 839 F.2d 1265 (7th Cir. 1988). See also *Johnson v. California*, 543 U.S. 499 (2005) (risk of racial violence does not justify routine racial segregation in prison).

Pekin's warden decided to scatter gangs' members throughout the general population, so that any given

gang was a minority in each cellblock. The warden's policy dealt with the risk of inter-gang violence by trying to identify the most likely aggressors and victims, then assigning the aggressors to segregation while keeping the potential victims in protective custody. The warden and guards also tried to negotiate truces between gangs.

The warden believed that a truce was in place at Pekin between the Sureños and the Norteños. Even so, before assigning the victim to a cell with Gustin, guards asked him whether the assignment would create a problem. Gustin declared that the assignment was acceptable and pledged to remain peaceable. He broke that promise, and his appellate lawyers contend that the guards should have known that he would. Maybe, but ours is not a suit by the victim contending that the guards violated the eighth amendment by exposing him to a known danger. See *Farmer v. Brennan*, 511 U.S. 825 (1994).

Gustin's insistence that every guard must have known that he was bound to attack his cellmate confesses predisposition, which defeats any entrapment defense. Gustin's trial lawyer omitted this defense because it had no prospect of success, yet would have opened the door to damning evidence that would have painted Gustin as a predator with a history of violence and no qualm beforehand or repentance afterward. And it would not have done trial counsel any good to argue self-defense, duress, or any of the other justification defenses. If Gustin feared that his cellmate would attack him, he should have raised the subject with the guards. The law does not

permit a preemptive strike when other options are available. See *United States v. Bailey*, 444 U.S. 394 (1980).

A contention that the guards' conduct was "outrageous" because they know how members of gangs behave, and that the guards compelled Gustin to attack by placing him near a member of a rival gang, is the sort of thing that kidnappers and terrorists put in demand notes. It is not a legal argument; it is the opposite of one. A kidnapper may write: "Pay me $5 million or I will kill the victim. The fault will be yours for refusal to pay. If the victim dies, you bring it on yourselves." Terrorists make similar statements when they insist that a nation that fails to withdraw from disputed territory is "responsible" for the deaths from the terrorists' action. Or suppose a drug dealer wires himself to a bomb that will detonate if he ever refuses a drug deal, or his confederates say that they will beat anyone who does not take every profitable offer and hand over 50% of the gain. The dealer then says that it would be "outrageous" for an agent to offer drugs, because the dealer just couldn't refuse. The idea in any of these situations is that a person who makes a sufficiently grave and credible threat shifts to someone else the responsibility if that threat is carried out.

This is not how the criminal law works. A kidnapper who kills his victim when the ransom is not paid is guilty of premeditated murder; he cannot contend that failure to pay is entrapment or "outrageous government conduct" that excuses the killing. Someone who commits a crime willingly, when the opportunity is extended on a silver platter, must pay the penalty. See *United States v.*

*Murphy*, 768 F.2d 1518, 1524 (7th Cir. 1985). Gustin cannot shift the blame to the guards. Placement of the victim in Gustin's cell (or perhaps even his cellblock) played a causal role, to be sure; had Gustin and his victim always been physically separated, the attack could not have occurred. One could equally say that a bank's placement of money in tellers' drawers, rather than a locked vault, is responsible for bank robbery and excuses the robber, who could not turn down the opportunity. So too with people who walk on deserted streets at night: making oneself an easy target does not excuse a mugging. We are non-plussed that Gustin's appellate lawyers could think otherwise.

AFFIRMED